## Spaulding Howard vs. Walter Fessenden.

The right of the owner of a dwelling-house which stands upon land of others to remove it therefrom is not lost by his moving out of the same, preparatory to a sale and removal thereof; especially if he is authorized by one of the tenants in common of the land to allow it to remain until he can dispose of or remove it.

An agreement giving a right to remove a dwelling-house which is put upon the land of others may be implied from circumstances.

By consent of A., who was tenant for life of land, B. put a dwelling-house and other buildings thereon for his own use. A. died, and B.'s wife thereupon became a tenant in common of the land. B. and his wife thereafter conveyed their interest in the land, reserving the buildings, to C., who told B. that the buildings might remain till he could have a chance to dispose of or remove them. The other tenant in common, by certain conversations, recognized the buildings as B.'s personal property. B. then moved from the dwelling-house, and nine days afterwards sold the buildings to C. *Held*, that from these facts a jury might find that the buildings passed to C. as personal property.

Petition for partition. The petitioner claimed to own three undivided fourth parts of the land in question, and of a small house, shed and barn standing thereon. The respondent admitted the petitioner's title to the land, but denied that the petitioner had any title to the buildings, and claimed title thereto in himself and his son, Albert L. Fessenden. The only question in issue was as to the title to the buildings.

At the trial in the superior court, before *Rockwell*, J., it appeared that in 1841 Luther Spaulding, the owner of the land, died, leaving the same to his wife for life, with remainder to his daughter, Mrs. Eliza Howard, for life, and remainder over to such of his grandchildren as should also be heirs of said Eliza. Mrs. Spaulding died in 1841; and Mrs. Howard, who after wards married one Searles, died in 1865, leaving four children namely, Spaulding Howard, Lucy Day, and two others. Afte the death of Mrs. Howard, Spaulding Howard acquired the title of two of the other children; and Lucy Day and her husband conveyed her interest in the land, reserving and excepting the buildings, to the respondent, Walter Fessenden; and afterwards, on the 2d of April 1866, Mr. and Mrs. Day executed an instrument to convey the buildings to the respondent and his son, Albert L. Fessenden.

Mr. Day testified that he bought the barn for $40, and put it upon the land, while Mrs. Searles [Mrs. Howard] was tenant foɪ life, by her consent; that afterwards, by her consent, he built a small shop there, taking the timber from the land and paying her therefor by work; that he afterwards enlarged the shop, and changed it to a dwelling-house, by her consent; that the barn always rested upon blocks, and there was a small cellar under the house, walled with cobble stones, such as the rest of the house was supported by; that, after the death of Mrs. Searles, the petitioner said he would give as much as anybody else would for the buildings; that, after some negotiations, they failed to agree upon a price; that he believed that he told the petitioner that he thought Fessenden would pay more for them than he (the petitioner) would; that he moved out of the buildings on the 24th of March 1866, leaving them unoccupied, and after putting up written notices sold them at auction to the Fessendens.

Walter Fessenden, the respondent, testified that soon after he bought the land of Mr. and Mrs. Day the petitioner said to him, "I am glad you have bought the land of Mr. Day, for I could not do anything with him;" to which he replied that he had not bought the buildings; and the petitioner said, he had offered Day more than the buildings were worth, and should not do anything more about it, and Day might move them off, or do what he had a mind to. The respondent further testified that he had heard that the buildings were once under attachment, and asked the petitioner, who said he did not know of any; and that, at the time he bought the land, he told Day that, so far as he (the respondent) was concerned, the buildings might remain there till he could have a chance to dispose of or remove them. On cross-examination, the respondent testified that he told the petitioner that Day asked more for the buildings than he would give for them, and " we said to each other, if he won't take that, he may give them away."

The petitioner asked the court to rule that there was no evidence competent for the consideration of the jury, tending to prove title to the buildings in Walter and Albert L. Fessenden as separate from the land.

The judge, being of opinion that, whatever might have been the rights or title of Mr. Day to the buildings during the life of Mrs. Searles, or after her death, while his occupation and possession of them continued, yet, as the testimony went to prove, among other things, that, before the sale of the buildings at auction, and the conveyance of them by Day to the Fessendens, Day had left them on the land, not retaining possession or continuing occupation, he could convey no title to the buildings; and if he should submit the evidence to the jury, he must instruct them that such was the law, and that the testimony in relation to the acts and declarations of the respondent would have no effect upon the titles, ruled as requested above by the counsel for the petitioner.

Whereupon, by consent, a verdict was rendered that the petitioner was seised of three undivided fourth parts of the buildings.

The respondent alleged exceptions.

*A. R. Brown & F. A. Worcester*, for the respondent.

*A. P. Bonney*, for the petitioner.

WELLS, J. The pleadings put in issue the right of the petitioner to have partition as prayed for, in part; Gen. Sts. *c.* 136, § 16; viz. as to the house and barn standing on one corner of one of the lots. The general description as land, in the petition, is sufficient to include the buildings. By the replication, the petitioner expressly avers that these buildings are part of the realty, and that he is owner of them in the same proportions that he is owner of the land, and is entitled to have partition accordingly. His right to have such partition of the buildings as well as the land depends upon his title to them as realty; and, if he has no such title, it is immaterial whether the respondent owns them as realty or as personal property. He claims to hold them as personal estate of himself and one Albert L. Fessenden. If he can establish that right, the judgment for partition should be limited accordingly ; the petitioner should not have partition of these buildings ; nor a partition of the land based upon a valuation which includes these buildings. *Parsons* v. *Copeland*, 38 Maine, 537.

Upon the trial of this issue in the superior court, the judge ruled, at the request of the plaintiff, "that there was no evidence, competent for the consideration of the jury, as tending to prove title to the buildings" in the Fessendens, separate from the land. The reason assigned for this decision was, that by moving out of the house and leaving the buildings on the land, "not retaining possession or continuing occupation," Day lost whatever rights he might have had previously to hold the buildings as personal property, and so his sale to the Fessendens carried no title to them. But this view obviously overlooks all consideration of the facts that, before these transactions occurred, Walter Fessenden had become the owner of one undivided fourth of the land; that, by the terms of his deed, the buildings were reserved to Day; and that Fessenden had given permission, so far as he was concerned, that they might remain there until Day could dispose of or remove them. As tenant in common, Fessenden could lawfully occupy or authorize another to occupy any part of the land. His permission to Day to occupy with his buildings that portion of the land which they covered gave him all the rights of a tenant at will; at least until the other tenants in common should actually enter upon him. *Rising* v. *Stannard,* 17 Mass. 282. The mere fact of moving out of the house, preparatory to a sale and removal of the buildings, cannot be regarded as an abandonment of his rights. If it were so, it would be difficult to see how a tenant at will could ever exercise his right of removal of a dwelling-house, except by moving his family in the building. The time that elapsed before the sale, viz. from March 24th to April 2d, certainly did not exhaust the reasonable time to which he would be entitled for such a purpose. As a mere license to remove the buildings, this permission would continue a reasonable time, unless revoked, or defeated by the other tenants in common. And it was not determined in either mode. So far therefore as the ruling of the court rests upon the ground thus assigned for it, it was clearly wrong.

It is a more difficult question to determine whether the **evidence** would warrant a jury in finding that Day ever had **any**

right to hold the buildings as personal property. But we are of opinion that the evidence should have been submitted to the jury upon this question.

*Prima facie* all buildings, and especially dwelling-houses, belong to the owner of the land on which they stand, as part of the realty. It is only by virtue of some agreement with the owner of the land that buildings can be held by another party as personal property, with a right of removal. If erected wrongfully or voluntarily without such agreement, they become the property of the owner of the soil. If built by a husband upon land of his wife, they become realty, because he could make no agreement with his wife, and therefore the law cannot imply an agreement for separate ownership. *Washburn* v. *Sproat,* 16 Mass. 449. But when erected by a tenant for purposes of trade and business, the agreement for separate ownership and right to remove may be implied from the circumstances of the case, the relations of the parties, and usage. *Penton* v. *Robart,* 2 East, 88. *Taylor* v. *Townsend,* 8 Mass. 411. *Van Ness* v. *Pacard,* 2 Pet. 137. That the agreement for this purpose may be either express or implied is held in *First Parish in Sudbury* v. *Jones,* 8 Cush. 184, and *Murphy* v. *Marland,* Ib. 575. That an agreement for the right of removal, or that the buildings shall remain as the personal property of him who erects them, may be implied from the fact that they were erected by permission from the owner of the land, seems to be held in *Wells* v. *Banister,* 4 Mass. 514; *Doty* v. *Gorham,* 5 Pick. 487; *Hinckley* v. *Baxter* 13 Allen, 139; and *Curtis* v. *Riddle,* 7 Allen, 185. Such is the settled doctrine in the state of Maine. *Osgood* v. *Howard,* 6 Greenl. 452. *Russell* v. *Richards,* 1 Fairf. 429; *S. C.* 2 Fairf. 371. *Jewett* v. *Patridge,* 3 Fairf. 243. *Pullen* v. *Bell,* 40 Maine, 314. And in *Parsons* v. *Copeland,* 38 Maine, 537, it is applied to the case of one tenant in common, who erects buildings upon the land held in common, with the consent of his co-tenants See also *Aldrich* v. *Parsons,* 6 N. H. 556, and *Dame* v. *Dame* 38 N. H. 429. Of course, this is not the necessary implication from such permission, and will not be drawn when a differen intention of the parties is indicated by the terms of any express

agreement between them in relation to the subject. *Milton* v. *Colby*, 5 Met. 78. *Hutchins* v. *Shaw*, 6 Cush. 58. Nor will it be drawn when a different intention is to be inferred from the interest of the party making the erections, or from his relations to the title in the land; as in case of buildings erected by a mortgagor; *Winslow* v. *Merchants' Insurance Co.* 4 Met. 306; or by one in possession under a bond for a deed; *Murphy* v. *Marland*, 8 Cush. 575; or by a reversioner of the entire estate; *Cooper* v. *Adams*, 6 Cush. 87. None of the decisions however seem to exclude such an inference in a case like the present. Day had no direct interest in the land. His wife had a right, in expectancy, to one fourth of the reversion; but as that depended upon her becoming heir of Eliza Howard, by surviving her, it was a contingent interest only. *Olney* v. *Hull*, 21 Pick. 311. The evidence tended to show that he placed the buildings upon the land with the express consent of Mrs. Searles, the life tenant, and with the knowledge of one or more of the persons interested in the remainder; that he intended them for his own exclusive use, and incurred all expenses of their construction. That they were not regarded as improvements upon the real estate is indicated by the fact that he paid even for timber procured from the land for the frame. If Mrs. Searles had been owner of the fee, there would be no reason against holding the buildings to be the personal property of Day; and as against her they would undoubtedly have been so held. So far as it concerns the one fourth interest, which came to Mrs. Day after the death of Mrs. Searles, the reservation in the deed from Day and wife to Fessenden establishes conclusively the character of the buildings as personal property. And as against this petitioner it would be competent for the jury to find that they were personal property, upon evidence peculiar or personal to himself; as upon his declarations or admissions, though made long since the erection of the buildings. *Ashmun* v. *Williams*, 8 Pick. 402. Applying the foregoing principles to the circumstances of the case, and to the admissions of the petitioner, as testified to by both Day and Fessenden, we think a jury would be justified in finding that, as against the petitioner, the buildings were held as personal

property. His declarations as to Day's ownership and his right to sell or remove the buildings may be supposed to have influenced Fessenden to purchase them; and there would be nothing unjust nor improper in holding him to their truth. *Saunders* v. *Robinson*, 7 Met. 310. *Barnes* v. *Barnes*, 6 Verm 388. The respondent is entitled to a new trial, and the verdict is accordingly set aside.