## SARAH W. WATRISS *vs.* FIRST NATIONAL BANK OF CAMBRIDGE.

Middlesex. Jan. 8. — June 29, 1878. AMES & LORD, JJ., absent.

A lessee, who, during the term, erects trade fixtures on the demised premises, and, before the expiration of the term, accepts a new lease of the premises, to commence at the expiration of the first term, containing different terms and conditions, making no reference to the old lease, and reserving no right to him in such fixtures, and in which he covenants to deliver up the premises at the end of the term in as good condition "as the same now are," cannot remove the fixtures after the expiration of the first term, although his occupation has been continuous.

CONTRACT for breach of a covenant contained in a written lease given by the plaintiff to the defendant, by which the lessee agreed "to quit and deliver up the premises to the lessor or her attorney peaceably and quietly at the end of the term, in as good order and condition . . . . as the same now are." The breach complained of was the taking down and removal of a fire-proof safe and vault, a furnace with pipes and flues, and certain counters. The answer contained a general denial, and alleged that the defendant owned the property removed. Trial in this court,

before *Ames*, J., who reported the case for the consideration of the full court, in substance as follows:

The plaintiff and one Hyde owned the premises as tenants in common, and by a lease dated January 1, 1861, demised them to the Harvard Bank for the term of five years, at the rent of $300 a year. The lease contained a clause giving to the lessee the privilege, at its option, of renewing and extending its enjoyment of the premises for the additional term of five years upon the same terms; and the lessee agreed "to quit and deliver up the premises to the lessors or their attorney, peaceably and quietly, at the end of the term, in as good order and condition, reasonable use and wearing thereof, fire and other unavoidable casualties excepted, as the same now are or may be put into by the said lessors," "and not make or suffer any waste thereof;" "nor make or suffer to be made any alteration therein, but with the approbation of the lessors thereto in writing having been first obtained;" and giving the lessors the right to enter to view and make improvements, and expel the lessee if it should fail to pay the rent as aforesaid, or to make or suffer any strip or waste thereof.

The lessee thereupon constructed in the building a fire-proof safe or vault, for the safe keeping of money, books and securities, also a portable furnace in the basement, with the necessary pipes, flues and registers for warming its rooms, and certain counters. The premises were occupied by the lessee as its banking rooms.

On May 16, 1864, the lessee was organized as a national bank under the laws of the United States, and its name was changed to the First National Bank of Cambridge, but there was no other change of its identity. In the course of the first term, a partition was duly had between Hyde and the plaintiff, by virtue of which the plaintiff became the sole owner of the premises. Before the expiration of the term, the defendant elected to continue to hold under the lease for the five additional years, and a new lease was executed between the parties to this action, bearing date October 7, 1870, granting to the defendant a further term of five years from January 1, 1871, at the rent of $800 a year. This lease contained the same clauses above quoted from the lease of January 1, 1861, and the following additional clause: "**And**

provided also, that in case the premises, or any part thereof, during said term, be destroyed or damaged by fire or other unavoidable casualty, so that the same shall be thereby rendered unfit for use and habitation, then, and in such case, the rent hereinbefore reserved, or a just and proportional part thereof, according to the nature and extent of the injuries sustained, shall be suspended or abated until the said premises shall have been put in proper condition for use and habitation by the said lessor, or these presents shall thereby be determined and ended, at the election of the said lessor or her legal representatives."

On or about November 5, 1875, the defendant, having concluded to remove its business to another building, proceeded to take down the vault, and remove the materials of which it was composed, and also the furnace, pipes, flues, registers and counters to its new banking rooms, contending that it had a right so to do.

It was agreed that the damage done by this proceeding to the building, if the property so removed could lawfully be considered as fixtures which the defendant, as an outgoing tenant, had a right to remove, was $75; that the plaintiff was entitled, at all events, to recover that sum, with interest, and that the building could for that sum be restored to the same good order and condition as it was in at the date of the first lease. The jury returned a verdict for the plaintiff for $75, and the judge reported the case for the consideration of the full court. If the plaintiff was entitled to recover a greater sum than the amount of the verdict, and if the alleged fixtures were removed wrongfully and in violation of her rights, the case was to stand for trial; otherwise, judgment was to be entered on the verdict.

*S. H. Dudley*, for the plaintiff.

*J. W. Hammond*, for the defendant.

ENDICOTT, J. It is stated in the report that the Harvard Bank, soon after taking possession of the premises under the lease of January 1, 1861, put in a counter, a portable furnace with its necessary connections, and a fire-proof safe or vault, for the removal of which, in 1875, this action is brought. In 1864, the Harvard Bank was organized as the First National Bank of Cambridge. No question is made that all the proceedings were according to law. The right to the personal property of the old

bank passed therefore to the defendant upon the execution of the necessary papers and the approval of the proper officers , no other assignment was necessary. *Atlantic National Bank* v. *Harris*, 118 Mass. 147, 151.

The right of the defendant to occupy the premises under the lease to the Harvard Bank for five years, and to exercise the option contained in the lease to hold the premises for five years more at the same rent, seems to have been conceded by the lessors ; for the defendant continued in possession, paying rent during the whole term of ten years contemplated by the lease, which expired January 1, 1871. We must assume that the title, not merely to movable chattels upon the premises, but also to trade fixtures put in by the Harvard Bank, passed to the defendant, as the plaintiff does not deny that the defendant could have removed such of the articles as are trade fixtures at any time before the final expiration of the lease on January 1, 1871.

In October, 1870, about three months before the final expiration of the term of the old lease, the plaintiff, one of the original lessors, who had in the mean time acquired the whole title to the premises, executed a new lease to the defendant, then in occupation, for a much higher rent, containing different stipulations from those in the old lease, particularly in regard to abatement of rent in case of fire. This lease was to take effect January 1, 1871, but made no reference to the existing lease or to the removal of any trade fixtures then upon the premises. It was in no proper sense a renewal of the old lease. It contained the usual covenants on the part of the lessee to quit and deliver up the premises at the end of the term in as good order and condition " as the same now are." Although executed before the expiration of the earlier lease, it can have no other or different effect than if given on the day it was to become operative, and its stipulations and conditions are to be considered as if made on that day. And the question arises whether the acceptance of the new lease and occupation under it on January 1, 1871, was equivalent to a surrender of the premises to the lessor at the expiration of the first term. If it did amount to a surrender, it is very clear that the defendant could not afterwards recover the articles alleged to be trade fixtures.

The general rule is well settled that trade fixtures become annexed to the real estate; but the tenant may remove them during his term, and, if he fails to do so, he cannot afterwards claim them against the owner of the land. *Poole's case,* 1 Salk. 368. *Gaffield* v. *Hapgood,* 17 Pick. 192. *Winslow* v. *Merchants Ins. Co.* 4 Met. 306, 311. *Shepard* v. *Spaulding,* 4 Met. 416. *Bliss* v. *Whitney,* 9 Allen, 114, 115, and cases cited. *Talbot* v. *Whipple,* 14 Allen, 177. *Lyde* v. *Russell,* 1 B. & Ad. 394. Baron Parke, in *Minshall* v. *Lloyd,* 2 M. & W. 450. This rule always applies when the term is of certain duration, as under a lease for a term of years, which contains no special provisions in regard to fixtures. But where the term is uncertain, or depends upon a contingency, as where a party is in as tenant for life, or at will, fixtures may be removed within a reasonable time after the tenancy is determined. *Ellis* v. *Paige,* 1 Pick. 43, 49. *Doty* v. *Gorham,* 5 Pick. 487, 490. *Martin* v. *Roe,* 7 E. & B. 237. See also *Whiting* v. *Brastow,* 4 Pick. 310, 311, & note.

There is another class of cases which forms an exception to the general rule. Where a lease was given by an agent without sufficient authority during the absence of the owner, and was terminated by the owner on his return from abroad, it was decided by this court that the lessees became tenants at sufferance, and could remove their fixtures within a reasonable time after such termination. *Antoni* v. *Belknap,* 102 Mass. 193. In *Penton* v. *Robart,* 2 East, 88, it was held that a tenant, who had remained in possession after the expiration of the term, had the right to take away his fixtures, and Lord Kenyon said, "He was in fact still in possession of the premises at the time the things were taken away, and therefore there is no pretence to say that he had abandoned his right to them." In *Weeton* v. *Woodcock,* 7 M. & W. 14, a term under a lease had been forfeited by the bankruptcy of the lessee, and the lessor entered upon the assignees to enforce the forfeiture, and it was held that they might have a reasonable time to remove fixtures ; and Baron Alderson said that " the tenant's right to remove fixtures continues during his original term, and during such further period of possession by him, as he holds the premises under a right still to consider himself as tenant." Mr. Justice Willes, commenting on these two last cases, in *Leader* v. *Homewood,* 5 C. B. (N. S.) 546, said : **"It**

is perhaps not easy to understand fully what is the exact meaning of. this rule, and whether or not it justifies a tenant who has remained in possession after the end of his term, and so become a tenant at sufferance, in severing the fixtures during the time he continues in possession as such tenant. But the rule, whatever its exact meaning may be, is plainly inconsistent with the argument relied on by the counsel for the plaintiff in the present case, viz., that the right of the tenant continues till he has evinced an intention to abandon his right to the fixtures." In *Mackintosh* v. *Trotter*, 3 M. & W. 184, Baron Parke, after stating that whatever is planted in the soil belongs to the soil, remarked " that the tenant has the right to remove fixtures of this nature during his term, or during what may, for this purpose, be considered as an excrescence on the term." He also refers to *Minshall* v. *Lloyd*, 2 M. & W. 450, as authority, wherein he stated in the most emphatic manner that " the right of a tenant is only to remove during his term the fixtures he may have put up, and so to make them cease to be any longer fixtures." It is clear from these cases that the right of a tenant, in possession after the end of his term, to remove fixtures within a reasonable time, does not rest merely on the fact that he is in occupation, or has not evinced an intention to abandon, but because he is still, in contemplation of law, in occupation as tenant under the original lease, and, as Baron Parke says, under what may be considered an excrescence on the term, that is, as tenant at sufferance.

But a very different question is presented when the same tenant continues in possession under a new lease containing different terms and conditions, making no reference to the old lease, reserving no rights to the lessee in fixtures annexed during the previous term and not removed before its expiration, and containing the covenant to deliver up the premises at the end of the term in the same condition. This is not the extension of or holding over under an existing lease ; it is the creation of a new tenancy. And it follows that whatever was a part of the freehold when the lessee accepted and began his occupation under the new lease must be delivered up at the end of the term, and cannot be severed on the ground that it was put in, as a trade fixture, under a previous lease which has expired. The failure of the

lessee to exercise his right to remove during the former term, or to reserve it in his new contract, precludes him from denying the title of his landlord to the estate and the fixtures annexed which have become part of it. The occupation under the new lease is in effect a surrender of the premises to the landlord under the old.

This view is supported by the authorities. The earliest case on the subject is *Fitzherbert* v. *Shaw*, 1 H. Bl. 258. A purchaser of lands having brought ejectment against a tenant from year to year, the parties entered into an agreement that judgment should be signed for the plaintiff, with a stay of execution for a given period; and it was held that the tenant could not, during the interval, remove the fixtures erected during the term and before action brought — on the ground that the tenant could do no act to alter the premises in the mean time, but they must be delivered up in the same situation they were in when the agreement was made and the judgment signed. This case was followed in *Heap* v. *Barton*, 12 C. B. 274, where there was a similar agreement, and Jervis, C. J., said that, "if the tenants meant to avail themselves of their continuance in possession to remove the fixtures, they should have said so." In *Thresher* v. *East London Waterworks*, 2 B. & C. 608, it was held that a lessee, who had erected fixtures for purposes of trade on the premises, and afterward took a new lease to commence at the expiration of the former one, which contained a covenant to repair, would be bound to repair the fixtures, unless strong circumstances were shown that they were not intended to pass under the general words of the second demise; and a doubt was expressed whether any circumstances, *dehors* the deed, can be alleged to show they were not intended to pass. The case of *Shepard* v. *Spaulding*, 4 Met. 416, touches the question. A lessee erected a building on the demised premises, which he had a right to remove, but surrendered his interest to the lessor without reservation; afterward he took another lease of the premises from the same lessor, but it was held that his right to remove did not revive. When the new lease was made, it was of the whole estate, including the building. This differs from the case at bar only in the fact that there was an interval between the surrender of the interest under the first lease and the granting of the second,

when the lessor was in actual possession. But the acceptance of the new lease and occupation under it are equivalent to a surrender of the premises at the end of the term. In *Loughran* v. *Ross*, 45 N. Y. 792, it was held that, if a tenant, having a right to remove fixtures erected by him on the demised premises, accepts a new lease of such premises, including the buildings, without reservation or mention of any claim to the buildings, and enters upon a new term thereunder, the right to removal is lost, notwithstanding his occupation has been continuous. See also *Abell* v. *Williams*, 3 Daly, 17; *Merritt* v. *Judd*, 14 Cal. 59; *Jungerman* v. *Bovee*, 19 Cal. 354; *Elwes* v. *Maw*, 3 East, 38; Taylor on Landlord & Tenant, (5th ed.) § 552; 2 Smith's Lead. Cas. (7th Am. ed.) 228, 245, 257.

We are therefore of opinion that the defendant had no right during the second term to remove any trade fixtures placed there during the first. If any of the articles named were movable chattels, as the defendant contends, the plaintiff cannot recover for them; but if they were permanent or trade fixtures, the plaintiff may recover for their removal. *Case to stand for trial.*