SARAH A. McIVER & another *vs.* ARTHUR E. ESTABROOK
& another.

Worcester.   Oct. 4, 1882. — April 3, 1883.   C. ALLEN, COLBURN & HOLMES,
JJ., absent.

A tenant at will of a lessee of land erected a small building on the land resting on
    stone posts sunk into the ground.   The building was erected with the knowl-
    edge and consent of the lessor of the land, and with an understanding on his
    part, and on that of the tenant at will, that it could be removed as a trade fix-
    ture.   Both tenancies expired at the same time, and neither tenant removed the
    building ; the lessor resumed possession of the land, and soon afterwards the
    former tenant at will hired it with other land at an increased rent.   *Held,* that
    the tenant at will could not, after this, remove the building, or maintain
    replevin for it, on the refusal of the owner of the land to allow its removal.

REPLEVIN of a building.   Trial in the Superior Court, with-
out a jury, before *Knowlton,* J., who allowed a bill of exceptions,
in substance as follows :

In 1862, James Estabrook, senior, the father of the defend-
ants, and Arthur E. Estabrook, one of the defendants, were the
owners of an estate, consisting of a tract of land, with a large
building between four hundred and five hundred feet long, used
for manufacturing purposes, and occupied by various persons, to
whom the Estabrooks rented rooms and power.   In 1862, Rich-
ardson, Merriam & Company hired of them room in said build-
ing with power, which they occupied for manufacturing pur-
poses, and became tenants at will.   Among the occupants of said
building, at that time, was the firm of E. C. Cleveland & Com-
pany, who were also tenants at will, and who continued so until
1864, when they took a lease in writing of the entire establish-
ment, excepting such buildings on the premises as had been
erected by and belonged to the other tenants, to run from Jan-
uary 1, 1865, to January 1, 1870 ; and, after that time, the
various tenants of the establishment attorned to Cleveland &
Company, and paid their rent to them until the failure of Cleve-
land & Company, which occurred in October 1869.   No notice
was given to the tenants of the intention to make this lease
before it was executed and delivered.

Richardson, Merriam & Company knew of the existence of
the lease after it took effect ; and, during the existence of the

lease, Richardson, Merriam & Company hired of Cleveland & Company some additional room, which they continued to occupy until the expiration of the lease. During the continuance of the lease, the Estabrooks built an addition to said shop seventy-eight feet long, and for that purpose took a lease in writing from Cleveland & Company of the land upon which the same was built, at the nominal rent of one dollar.

At the expiration of the lease, the Estabrooks resumed control of the premises; and, shortly after, Richardson, Merriam & Company hired of the Estabrooks a portion of the room they were occupying, including the land on which the building was, and some additional room in the new part, at an increased rent agreed upon between the parties, and continued their occupation thereof uninterruptedly until October 28, 1876, when, they having failed in business, receivers were appointed by the Supreme Judicial Court, upon the application of one of their creditors, and, by a decree of said court, were directed to take possession of their property, convert the same into money, and hold and dispose of the same as the court might thereafter direct. After the receivers were appointed, proceedings in bankruptcy were instituted against Richardson, Merriam & Company, and by direction of the court the proceeds of the sale of their property were paid over to their assignees in bankruptcy, and distributed among their creditors, among whom were the defendants, whose demand amounted to over $5000.

After the receivers were appointed, they caused an inventory and an appraisal of all the property of Richardson, Merriam & Company in and about their shop to be taken, including the building in question, and on February 17, 1877, the plaintiffs bought the entire property described in the inventory (including said building) from the receivers at an agreed price of $10,000, and took a parol lease of the defendants of the real estate which had been occupied by Richardson, Merriam & Company under a new contract, at different rent, together with all the privileges and appurtenances enjoyed by said Richardson, Merriam & Company.

In 1874 James Estabrook, senior, deceased, and the defendant James E. Estabrook became an owner in common with the other defendant by inheritance of the premises.

Before the plaintiffs bought the property of the receivers, and while they were negotiating for its purchase, they hired of the defendants the premises as aforesaid, and succeeded to the business of Richardson, Merriam & Company, which they carried on as long as they continued in the occupation of said premises.

Between October 28, 1876, and February 17, 1877, Richardson, Merriam & Company continued in the occupation of said premises, carrying on their business to a limited extent; and on February 17, 1877, the plaintiffs entered into the occupation thereof, and continued uninterruptedly in such occupation until February 20, 1881. During that period several changes were made by agreement between the parties in the amount to be paid for the rent, which was payable, and paid, quarterly.

On July 1, 1880, the plaintiffs and the defendants not being able to agree with reference to the rent (the defendants having made demand for increased rent), the defendants gave the plaintiffs a notice to determine their tenancy, and on January 3, 1881, the defendants caused the shafting which communicated power to the plaintiffs' machinery to be uncoupled; whereupon the plaintiffs and the defendants made a special agreement as to the rent for one month, and, at the end of that time, they made another agreement for the rent to run until February 20, 1881. The plaintiffs paid their rent when due during all the time they remained in the premises.

Between 1862 and February 17, 1877, Richardson, Merriam & Company were all the time in constant occupation of the premises hired by them, and the plaintiffs were in constant occupation of the premises hired by them until February 20, 1881, when they surrendered them to the defendants.

In 1866, Richardson, Merriam & Company erected the building in question at a cost of $700, upon land adjoining the shop, for an office and storehouse. It was a building fifteen by thirty feet, resting upon stone posts sunk into the ground, and intended by them to be used in connection with their business for an office and storeroom, and was so used by them during all the time of their occupation, and also by the plaintiffs during the time of their occupation. Richardson, Merriam & Company, and the plaintiffs during all the time of their occupation, were tenants at will of the different persons before named.

On February 8, 1881, the plaintiffs, in contemplation of surrendering the premises, attempted to remove the building, but were forcibly prevented from so doing by the defendants, whereupon they brought this action.

Nothing was said, at the time when any of the changes in the rent or the occupation of the premises were made, with reference to the building by any of the parties. The building was erected with the knowledge and consent of the Estabrooks, and with an understanding and belief on their part that it could be removed as a trade fixture. Richardson, Merriam & Company also erected the building with that understanding, and between that time and February 8, 1881, the Estabrooks never exercised any acts of ownership or control over it, or claimed it to be their property, otherwise than as may be inferred from their leasing it as aforesaid.

Upon these facts, the plaintiff asked the judge to rule, as matter of law, that the right to the building and the right to remove it continued in the plaintiffs up to the time of bringing the suit. The judge declined so to rule, and found for the defendants; and the plaintiffs alleged exceptions.

*F. A. Gaskill*, for the plaintiffs.

*F. P. Goulding*, for the defendants.

W. ALLEN, J. Richardson, Merriam & Company, being tenants at will of Cleveland & Company, who were tenants for years of the Estabrooks, erected the building in question. The building, unless affected by some special act or agreement of the parties, was a fixture which the tenant had a right to remove at or before the end of his term. It became, when erected, a part of the realty, subject to the right of the tenant to sever it from the realty and convert it into personalty. If the tenancy at will should end before the estate for years, and the tenant at will had not removed the fixture, it would remain as part of the demised premises, with the right in the tenant for years to remove it during his term. In this case, the tenancies at will and for years determined at the same time, and neither tenant removed the building. The Estabrooks resumed possession of the premises, and soon afterwards leased at will to Richardson, Merriam & Company a portion of the premises they had held under Cleveland & Company, including the land on

which the building stood, and the building, and some additional room, at an increased rent. We infer from the exceptions, though it is not expressly stated, that, after the termination of the lease for years, and until the lease just mentioned, Richardson, Merriam & Company occupied, as tenants at will of the Estabrooks, the premises they had before hired of Cleveland & Company. The plaintiffs subsequently purchased the right of Richardson, Merriam & Company, and the defendants represent the Estabrooks. There have been changes in the tenancies which it is not necessary to consider, as, if the status of the building as real estate was fixed by the transactions referred to, nothing has occurred since which can change it. That it was so fixed, unless affected by some agreement of the parties, is plain from the case of *Watriss* v. *Cambridge National Bank*, 124 Mass. 571. The exceptions state that "the building was erected with the knowledge and consent of the Estabrooks, and with the understanding and belief on their part that it could be removed as a trade fixture. Richardson, Merriam & Company also erected the building with that understanding." The plaintiffs rely upon this as showing some agreement or consent of the parties, which will take the case out of the rule of *Watriss* v. *Cambridge National Bank*. But we do not see that this evidence changes the character of the erection. The fact that a landlord knows and assents to the erection of a fixture by a tenant, can afford no inference that he agreed that it should not be a fixture.

It is argued that Richardson, Merriam & Company were strangers to the Estabrooks, and that the consent given cannot be taken as consent by a landlord to a tenant. But they were tenants claiming under the Estabrooks, and holding an estate granted by their lease to Cleveland & Company, and the legal inference would be that the erection was made by them as tenants, and that the Estabrooks knew and consented to such erection. But, without regard to the relations of the parties, the consent of a landowner that a building to be erected on his land shall be personal property cannot be inferred from his consent to the erection of a building which he and the person erecting it both understand shall belong to the realty.

*Exceptions overruled.*