In re UNITED CHEVROLET,
INC., Debtor.

George A. BUTLER, et al Trustee of Associated Realty Trust and of Realty Investment Trust, Plaintiff,

v.

UNITED CHEVROLET, INC., Defendant.

Bankruptcy No. 4–80–00246–G.
Adv. Nos. 4–81–0020, 4–81–0021.

United States Bankruptcy Court,
D. Massachusetts.

July 29, 1982.

Kendall Burford, Sokoloff & Burford, P. C., Maynard, Mass., for plaintiff.

John Griffin, Griffin & Wall, Worcester, Mass., for defendant.

### MEMORANDUM AND ORDER ON COMPLAINTS TO DETERMINE OWNERSHIP OF PROPERTY

PAUL W. GLENNON, Bankruptcy Judge.

This is a dispute between two lessors and their lessee over personal property sought to be sold by the lessee. The lessors each filed a complaint to determine the ownership to items of personal property claimed to have been so affixed to the realty as to have passed ownership of them to the lessor.

George Butler and others are the trustees of distinct Massachusetts Realty Trusts. The first is Associated Realty Trust ("ART") which owns the land and building out of which United Chevrolet, Inc. ("United" or "the debtor") did business as a new car dealer. United also maintained a large service department on the premises to service the cars it sold. Most of the items which are in dispute, if not all of them, were used in some connection with the debtor's service department. The second party involved is Realty Investment Trust ("RIT") which owned a large vacant lot

across the street from the debtor's showroom, and from which the debtor stocked and sold used cars. The only items in dispute on this property are large items of display and so forth which were affixed to the realty by the debtor for its used car business. Although the trustees of each trust brought suit in their names on behalf of each trust, I will refer to the plaintiffs as ART and RIT.

Prior to the filing of a Chapter 11 petition under the Bankruptcy Code by United on April 29, 1980, both ART and RIT had recovered judgments in the Massachusetts District Court for possession and rent due under written leases signed by the president of United. After filing of its Chapter 11 petition, which stayed execution of the state court judgments, the debtor sold its franchise rights to another auto dealer and, in addition, attempted to sell many items of personal property which remained on the premises. It is as to these latter items, too numerous to list here, that the dispute arose. The Court heard extensive testimony as to the nature of each item of personal property, the nature and degree of each item's annexation to the realty in question, the difficulty and expense attendant to removing each item, and the purpose for which each item was affixed to the real estate. In addition, the Court took a personal view of each property and of all the items in question. After reviewing briefly the law in Massachusetts as to the matter at hand, and the applicable law on the issue to which I feel bound, I shall discuss my findings as to each item as it is listed in the schedules attached to each complaint.

## DISCUSSION OF MASSACHUSETTS LAW

Both sides agree that the leading case in Massachusetts on ownership rights to personal property which is affixed to realty is *Stone v. Livingston*, 222 Mass. 192, 110 N.E. 297 (Mass.1917). There a trustee in bankruptcy claimed ownership to certain very large machines used in a worsted mill as against a foreclosing mortgagee. Each machine weighed 2800 to 3000 pounds, each

was fastened to the floor by lag screws and could be easily removed without damage to themselves or to the building to which they were affixed, and each was adaptable to use in other like businesses. In discussing the cases which had ruled upon the question to that date, the Supreme Judicial Court of Massachusetts found that the decisions as to whether or not a chattel had been converted into realty fell into three classes:

1. Those where the chattel or item of personal property had been so affixed to the realty that its indentity had been lost, or had been so annexed that it could not be removed without material injury to the real estate or itself;

2. Those where the items were manifestly furniture as distinguised from improvements;

3. "Those cases where intention is the controlling fact and where such fact is to be determined upon consideration of all the circumstances", including the purpose, means, form and degree of annexation. at p. 299. In the first two classes, the facts were held to be capable of rebutting all other evidence of contrary intention. Thus, the court could rule as a matter of law.

In the *Stone* case it was held that the machines could not be said to have lost their identity, nor could they be said to be incapable of removal without material injury to themselves or the building to which they were attached, and therefore, it could not be said as a matter of law that they were converted into realty (class # 1). Likewise, it was held that they could not be called chattels as a matter of law (class # 2). Thus, and in view of the fact that the machines were not especially designed for use upon the premises, were not peculiar in their pattern, were easily removable, and were equally adapted to use in a like business, the court held that the question was one of intent which was properly left to the fact finder and not to be decided as a matter of law.

The rule of *Stone* is that unless personal property has been so annexed to the real estate as to have lost its identity or

the ability to be removed safely and easily, or unless it is clearly furniture, the issue of its classification as either realty or personalty is a question of fact to be determined by the objective intent of the parties manifested by their acts and implied from what is external and visible. See *Bay State York Co. v. Marvix, Inc.*, 331 Mass. 407, 411, 119 N.E.2d 727 (Mass.1954). In determining what was the intent of the parties, consideration must be given to the nature of the chattel and the apparent object, effect, and mode of its annexation to the realty. *Id.* In that case, the court held that certain air conditioners, and a water tower affixed to the roof to circulate water to the air conditioners, were personalty rather than realty because:

1. The items were of standard design;

2. The items were readily detachable without resulting injury to themselves or the building; and

3. The items were capable of being moved from place to place within the same or other buildings.

As a result, the Court concluded that the separate items were not part of an overall air conditioning system, and therefore, were not installed with any definite purpose or goal of permanent retention.

 It should be noted at this juncture that the law in Massachusetts regards with particular favor the rights of tenants to remove articles annexed by them to the freehold, and extends much greater indulgence to them in this respect than to others. *Taylor v. Townsend*, 8 Mass. 411 (1812); *Whiting v. Brastow*, 4 Pick. 310, 21 Mass. 310 (1826); *Miller v. Baker*, 1 Metc. 27, 42 Mass. 27 (1840); *Wall v. Hinds*, 4 Gray 256, 70 Mass. 256 (1855); *Smith v. Bay State Savings Bank*, 202 Mass. 482, 88 N.E. 1086 (1890); *Looney v. Trimount Theatres*, 282 Mass. 275, 184 N.E. 683 (1933); *Freitas v. Hebert*, 19 Mass.App.Dec. 57 (Mass.App. 1960). This rule appears to be so because a tenant's interest in the realty is much more limited than that of an owner, and therefore the reasonable inference is that it was not his intention to permanently improve the property. As a result, the case law suggests that as between a landlord and a tenant, a tenant may remove any and all trade fixtures which he had annexed to the freehold, provided he do so reasonably and before the end of his term. *Wall v. Hinds*, supra. The only caveat might be that only those items may be removed which may be removed without doing material damage to the premises of the landlord. See *Talbot v. Whipple*, 14 Allen 177, 96 Mass. 177 (1867); *Wright v. Michelman*, 246 Mass. 401, 141 N.E. 234 (1923). Finally, the tenant's right to remove trade fixtures is forfeited if he does not do so before the expiration of his term or before quitting his lease. *Shepard v. Spaulding*, 4 Metc. 416, 45 Mass. 416 (1842); *Shaw v. Carbrey*, 13 Allen 462, 95 Mass. 462 (1866).

Thus, to summarize the law in Massachusetts, unless an item of personalty affixed to the realty is so clearly realty or so clearly personalty that it can be determined as a matter of law, the question is one of intent to be determined by the outward manifestations or acts of the one who affixed the item to the realty. However, as between a landlord and a tenant, the reasonable inference is that a tenant does not intend to permanently affix chattels to the landlord's real estate, and therefore may remove any item so affixed, provided he can do so without material damage to the landlord's premises or to the chattel, and prior to the expiration of the term.

 Dealing first with the complaint of ART, there is a list of 62 items attached to the complaint as Exhibit 1. However, at the time of the Court's view of the premises, ART waived any claim to the following items:

Light inspection board 4′ × 10′

(2) Walker Hi-Axle Stands

Screw Post Lift

Gear Oil Dispenser (no guage)

Manley Model P1130 Hydraulic Press with Arbor Press Attachment

Graco Pneumatic Undercoating Pump and Hose

Daubert Hand Held Pneumatic Undercoater

Gear Oil Dispensing Pump

Murphy Portable Engine Hoist Md1 HC–2000

Sun 920 Electronic Engine Tester

Screw Type High Post Lift

Pneumatic Bumper Lift Jack

Pneumatic Bumper Lift Jack

Convex Mirror on Wall

Pneumatic Bumper Lift Jack

Misc. Air Hose

Pneumatic Bumper Lift Jack

(3) Devilbiss Water Separators

Conveyer Belt System Motorized & Complete

That leaves 43 items remaining in dispute, which is too large a number for this Court to deal with each item in detail. Thus, my findings shall identify the items and my conclusions about them by category. All references to the items are in the way in which they are listed in Exhibit 1 of ART's complaint.

## I. ITEMS CLEARLY REALTY (AS A MATTER OF LAW)

Page 1:

Lift # 1—Hydraulic Car Lift

John Beam Visualiner Alignment Machine

Lift # 2—Hydraulic Car Lift

Lift # 3—Hydraulic Car Lift

Lift # 4—Hydraulic Car Lift

Page 2:

Lift # 8—Hydraulic Lift

Lift # 9—Hydraulic Lift

Lift # 10—Hydraulic Lift

Page 3:

Lift # 11—Hydraulic Lift

Lift # 12—Hydraulic Lift

20 Explosion Proof Lights with Conduit

All the above items were shown by the testimony, exhibits, and actual viewing to be so annexed to the realty that they could not be removed without material injury to the realty. The lifts were imbedded a number of feet in the ground and covered with concrete. Likewise, the alignment machine required the digging of a hole and concrete poured over it, so that the machine could be set up below floor level. In this way, automobiles could be driven on to the machine for its use. The lights are built into 4 walls in one room for use as a paint drying mechanism. All of these items appear to be so much a part of the real estate that removal of them cannot be justified under the circumstances. See *Bliss v. Whitney*, 91 Mass. 114, 9 Allen 114 (1864).

The debtor has argued that it does not wish to remove the entire lift, but only the above-ground portions known as "swing arms", which are easily removed from the lift assembly. The swing arms are the part of the lift onto which the automobile is actually driven.

■ However, where the lifts themselves have been found to be part of the realty, their independent parts may also be found to be realty. *Hopewell Mills v. Taunton Savings Bank*, 150 Mass. 519, 23 N.E. 327 (1890). Without the swing arms the mechanisms lose their identity as lifts, and the debtor should not be permitted to claim them as personalty when they are an integral part of a device found to be part of the realty. Thus all of the items noted here are determined to belong to ART.

## II. ITEMS WHICH ARE CLEARLY PERSONALTY

■ Page 1:

Amana Air Conditioner

Sears Cold Spot Air Conditioner

Boston Filter Water Cooler

Hot Point XI Air Conditioner

Sears Air Conditioner

Air Sweep Air Conditioner

Misc. Air Hose

General Electric Fan

ARO Overhead Reel and Hose

Page 2:

Air Conditioner

(28) Doors of Large Lockers

(4) Sets Change-O-Matic Uniform Lockers

Lift # 5—Benwil Electric Hoist Md1 TT5

3 Doors of Lockers

Lift # 6—Hydraulic Lift Scissor Type

(3) ARO Pneumatic Grease Pump

Lift # 7—Benwil Md1 TT5 Electric Lift

ARO 5 Reel Pneumatic Oil & Grease Dispenser

Oasis Water Cooler

ARO Reel and Hose

Page 3:

Electric Fan

Convex Mirror

Halsey-Taylor Water Cooler

(3) Lift Pistons for Car Lifts

The above items are either so clearly personalty or so clearly not intended to be a permanent part of the realty, that the Court feels it may rule as a matter of law that the items identified are the property of the debtor.

The air conditioners, water coolers, fans, and hoses are all easily removed without any damage to themselves or the real estate. Further, to the extent they were affixed to the real estate, there clearly was no act or manifestation which could lead the Court to conclude that they were intended to be made part of the realty. The same is true of the rest of the items listed, all of which I have seen personally and which I conclude, as a matter of law, could not have been intended to be permanently affixed to the property.

### III. THOSE ITEMS WHERE INTENT IS TO BE DETERMINED BY THE FACTS

That leaves the following items for discussion as to the intent of the debtor when they were installed:

Power Post 20 Ton Floor Pull System MDL PR100 + Attach

Complete Exhaust System for Paint Room (new 5000)

Champion 10 hp Shop Compressor

Parts Compressor (tank only)

Lei Roi 5 hp Shop Compressor

Wayne 5 hp Shop Compressor

I find all of the above items were intended to be items of personalty, retained their individual characteristics as such, are easily removable without damage to themselves or

the property, and may be readily installed for use in another business operation. While all of the items are of some bulk, or would require dismantling in order to be moved, I find that they have never lost their character as personalty, and therefore conclude that the items are properly the property of the debtor.

In the complaint of RIT, only four items are sought by the lessor. They are:

Fencing Approx. 1400 ft. 10′ High with wire

Lights—(3) 50 ft. High Mast Poles, Complete with 24 Luminaires Each. Installed and In Place

Small Building

As to each of these items I find that they are so much a part of the realty as to conclude that they are the property of RIT.

The fencing, lights, and signs are all fixed in concrete, have been attached to the realty in such a way as to create the impression that they are permanent fixtures, and so lost their identity as chattels that the Court must find them to have been intended as permanent fixtures. Each item has been attached to the realty in such a permanent way as to indicate that the debtor never intended to remove them.

Finally, it is true that a small building may, in some circumstances, retain the character of a chattel if such was the intention of the parties. *Nadien v. Bazata*, 303 Mass. 496, 22 N.E.2d 1 (1939). Further, although buildings generally belong to the owner of the land, an express or implied agreement between the parties to the contrary can permit the Court to find that the building should remain personal property. *Madigan v. McCarthy*, 108 Mass. 376, 11 Am.Rep. 371 (1871); *Howard v. Fessenden*, 96 Mass. 124, 14 Allen 124 (1867); *Peirce v. Goddard*, 39 Mass. 559, 22 Pick. 559 (1839). However, the law is clear that a lessee, who erects on the realty a building (or who attaches a trade fixture) which he has a right to remove, must do so before the expiration of his term, or forfeit his right. *Shepard v. Spaulding*, 45 Mass. 416, 4 Metc. 416 (1842); *Watriss v. First National Bank*,

124 Mass. 571, 26 Am.Rep. 694 (1878); *McIver v. Estabrook*, 134 Mass. 550 (1883).

The debtor has alleged that it had a clause in its lease showing that it retained ownership of all of the above items, including the building. But, the law is clear that the building prima facie belongs to the owner of the land, unless there was an agreement to the contrary. *Barnes v. Hosmer*, 196 Mass. 323, 82 N.E. 27 (1907), and unless the building was removed prior to the end of the lessee's term, *Natural Autoforce Ventilator Co. v. Winslow*, 215 Mass. 462, 102 N.E. 705 (1913). In the case at bar, the debtor's leases were terminated by the Worcester County District Court in separate judgments on February 22, and March 14, 1980. From that point on, the debtor was no more than a tenant at will or at sufferance. The case of *Shepard v. Spaulding*, supra, clearly held that if the lease term ends, the lessee's right is lost and may not be revived even by another lease of the same premises. See also *Watriss v. First National Bank*, supra, and *McIver v. Estabrook*, supra. Thus, I conclude that whatever right to the building the debtor may have had under its lease was forfeited, and the ownership of the building is in RIT.

Finally, the debtor has claimed ownership of a facing on the ART building, which facing was not mentioned in the complaint. I nevertheless find that the facing is now so much a part of the building, and could not be removed without defacing the front of the building, that it is and should remain part of the real estate.

Judgment is entered in accordance with this Memorandum. SO ORDERED.