HARRY L. AINSWORTH vs. ADDIE L. LAKIN, administratrix.

Hampden.    September 24, 1901. — February 25, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER,
HAMMOND, & LORING, JJ.

*Nuisance.    Real Estate.    Interest.    Damages.*

The owner of the wall of a building left standing after the building has been de-
stroyed by fire, which would have to be taken down in order to rebuild, is liable
for an injury caused by its fall after the expiration of a reasonable time for
investigation and removal.

In an action against a landowner for damage caused by the fall of a wall of a
building left standing after the building had been destroyed by fire, it appeared,
that the part of the wall that fell had been the wall of the third story, that the
third story before the fire had been conveyed to another person to hold " dur-
ing the life of the building " and that by the fire the life of the building had
been destroyed, as previously decided by this court.   It further appeared, that
before any part of the wall could be built upon safely the third story at least
would have to be taken down.   *Held,* that after the fire the walls of the third
story, resting on the structure below, became part of the realty with which they
were connected, and that the landowner became liable for the consequences of
maintaining them after the expiration of a reasonable time for investigation and
removal.

In an action for damage to the plaintiff's property caused by the fall of a wall
maintained in a dangerous condition by the defendant, the jury were instructed
to allow interest on the amount of the damages at the date of the injury, and did
so.   *Held,* that the instruction although technically inaccurate was correct in
substance; that, in ascertaining the damage at the date of the verdict, the jury
should take into account the lapse of time and put the plaintiff in as good a
position in reference to the injury as if the damages resulting from it had been
paid immediately, and this rule would authorize the giving of six per cent inter-
est although it did not compel it; and therefore in the absence of anything to
show that the defendant was injured by the instruction a new trial should not
be granted.

TORT for damage to property of the plaintiff caused by the
falling of a wall alleged to have been upon the land and within
the control of the defendant's intestate, which had been left
standing after the building of which it formed a part had been
destroyed by fire.   Writ dated December 2, 1899.

At the trial in the Superior Court, before *Aiken,* J., the jury
returned a verdict for the plaintiff in the sum of $4,257.28; and
the defendant alleged exceptions.

The case was argued at the bar in September, 1901, and afterwards was submitted on briefs to all the justices.

*A. S. Kneil,* (*S. S. Taft & R. A. Allyn* with him,) for the defendant.

*J. B. Carroll,* ( *W. H. McClintock* with him,) for the plaintiff.

KNOWLTON, J.   The defendant's intestate was the owner of the land and of the first two stories of the building which stood upon it before the fire.   The third story had been conveyed by the former owners to Lewis, Noble and Laflin, trustees, to hold during the life of the building.   By the fire the life of the building was destroyed, and the ownership of Lewis and others in the third story was terminated.   *Ainsworth* v. *Mount Moriah Lodge,* 172 Mass. 257.   The defendant's intestate was left with his land and the walls and some other parts of the first and second stories standing upon it, and with the walls of the third story, which had previously belonged to the trustees, resting on the structure below, and connected with it as a part of the realty.   All rights of other persons in the walls of the third story had come to an end.   As owner of the land and of the first and second stories of the building, he was owner of everything upon it which was a part of the real estate.   *Stockwell* v. *Hunter,* 11 Met. 448. *Shawmut National Bank* v. *Boston,* 118 Mass. 125.   His position in reference to the walls of the third story was like that of a landlord whose tenant leaves the leased land at the end of the term with structures that he has erected upon it, which have become a part of the realty.   These structures which are abandoned by the tenant immediately become the property of the landlord to whose land they are affixed.   *Burk* v. *Hollis,* 98 Mass. 55.   *Madigan* v. *McCarthy,* 108 Mass. 376.   *Watriss* v. *First National Bank of Cambridge,* 124 Mass. 571.   *McIver* v. *Estabrook,* 134 Mass. 550.

As owner of the land, and the structures upon it which were subject to the power of gravitation and likely to do injury to others if they fell, the defendant's intestate owed certain duties to adjacent landowners.   His duty immediately after the fire was affected by the fact that until then he had had no ownership or control of the upper part of the wall, and that the condition of the whole had been greatly changed by the effect of the fire and the destruction of the connected parts.   For dangers growing

out of changes which he could not prevent he was not immediately liable. *Gray* v. *Boston Gas Light Co.* 114 Mass. 149. *Mahoney* v. *Libbey*, 123 Mass. 20. The jury were therefore rightly instructed that, before a liability could grow up against the defendant's intestate after the fire, he was entitled to a reasonable time to make necessary investigation, and to take such precautions as were required to prevent the wall from doing harm.

We come next to the question, "What was his duty and what was his liability after the lapse of such a reasonable time?" There is a class of cases in which it is held that one who, for his own purposes, brings upon his land noxious substances or other things which have a tendency to escape and do great damage, is bound at his peril to confine them and keep them on his own premises. This rule is rightly applicable only to such unusual and extraordinary uses of property in reference to the benefits to be derived from the use and the dangers or losses to which others are exposed, as should not be permitted except at the sole risk of the user. The standard of duty established by the courts in these cases is that every owner shall refrain from these unwarrantable and extremely dangerous uses of property unless he provides safeguards whose perfection he guarantees. The case of *Rylands* v. *Fletcher*, L. R. 3 H. L. 330 ; *Fletcher* v. *Ryalls*, L. R. 1 Ex. 265, rests upon this principle. In this Commonwealth the rule has been applied to the keeping of manure in a vault very near the well and the cellar of a dwelling house of an adjacent owner. *Ball* v. *Nye*, 99 Mass. 582. See also *Fitzpatrick* v. *Welch*, 174 Mass. 486. That there are uses of property not forbidden by law to which this doctrine properly may be applied is almost universally acknowledged.

This rule is not applicable to the construction and maintenance of the walls of an ordinary building near the land of an adjacent owner. In *Quinn* v. *Crimmings*, 171 Mass. 255, 258, Mr. Justice Holmes shows that in reference to the danger from the falling of a structure erected on land "the decision as to what precautions are proper naturally may vary with the nature of the particular structure." He says, "As it is desirable that buildings and fences should be put up, the law of this Commonwealth does not throw the risk of that act any more than of

other necessary conduct upon the actor, or make every owner of a structure insure against all that may happen, however little to be foreseen."

The principle applicable to the erection of common buildings whose fall might do damage to persons or property on the adjacent premises holds owners to a less strict duty. This principle is that where a certain lawful use of property will bring to pass wrongful consequences from the condition in which the property is put, if these are not guarded against, an owner who makes such a use is bound at his peril to see that proper care is taken in every particular to prevent the wrong. *Woodman* v. *Metropolitan Railroad*, 149 Mass. 335, and cases cited. *Curtis* v. *Kiley*, 153 Mass. 123. *Pye* v. *Faxon*, 156 Mass. 471. *Harding* v. *Boston*, 163 Mass. 14, 19, and cases cited. *Cabot* v. *Kingman*, 166 Mass. 403, 406. *Robbins* v. *Atkins*, 168 Mass. 45. *Thompson* v. *Lowell, Lawrence & Haverhill Street Railway*, 170 Mass. 577. *Quinn* v. *Crimmings*, 171 Mass. 255, 256. *Boomer* v. *Wilbur*, 176 Mass. 482. *Sessengut* v. *Posey*, 67 Ind. 408. *Anderson* v. *East*, 117 Ind. 126. *Chicago* v. *Robbins*, 2 Black, 418, 428. *Homan* v. *Stanley*, 66 Penn. St. 464. *Mayor of New York* v. *Bailey*, 2 Denio, 433. *Bower* v. *Peate*, 1 Q. B. D. 321. *Tarry* v. *Ashton*, 1 Q. B. D. 314. *Gray* v. *Pullen*, 5 B. & S. 970, 981. *Dalton* v. *Angus*, 6 App. Cas. 740, 829. The duty which the 'law imposes upon an owner of real estate in such a case, is to make the conditions safe so far as it can be done by the exercise of ordinary care on the part of all those engaged in the work. He is responsible for the negligence of independent contractors as well as for that of his servants. This rule is applicable to every one who builds an ordinary wall which is liable to do serious injury by falling outside of his own premises. It is the rule on which the decision in *Gorham* v. *Gross*, 125 Mass. 232, rests, and the case is not an authority for any liability of a landowner that goes beyond this. See also *Gray* v. *Harris*, 107 Mass. 492; *Shrewsbury* v. *Smith*, 12 Cush. 177. The uses of property governed by this rule are those that bring new conditions which involve risks to the persons or property of others, but which are ordinary and usual and in a sense natural, as incident to the ownership of the land. The rule first referred to applies to unusual and extraordinary uses which are so fraught

with peril to others that the owner should not be permitted to adopt them for his own purposes without absolutely protecting his neighbors from injury or loss by reason of the use. In England this rule which was laid down in *Rylands* v. *Fletcher, ubi supra,* in reference to a reservoir of water, has since been held to be inapplicable where the collection of the water is in the natural and ordinary use of the land. *Fletcher* v. *Smith,* 2 App. Cas. 781. See *Carstairs* v. *Taylor,* L. R. 6 Ex. 217. So far as we know there is no case in which it has been applied to the erection or maintenance of the walls of an ordinary building.

The construction which should be put upon the judge's charge in regard to liability for standing walls is by no means certain. Some broad statements in it might seem to indicate that he was laying down a rule applicable to the construction and maintenance of walls of ordinary buildings so situated that if they fall they will be likely to injure the property of the adjacent owner. If this were the meaning, the instructions would be wrong. But taking the charge in its different parts in connection with the facts stated in the bill of exceptions, we think it was intended to state the rule applicable to the kind of wall that the jury were considering, and not to the walls of buildings generally. As was decided in a previous suit brought by this plaintiff, the life of the building had been destroyed by fire, and the walls which subsequently fell were no longer used in supporting a building. *Ainsworth* v. *Mount Moriah Lodge,* 172 Mass. 257. Not only was this the testimony of the plaintiff's witnesses, but it was the substance of the evidence introduced by the defendant. His experts testified that before any part of the wall could safely be built upon, the third story at least would have to be taken down. This upper part of the wall was that which was most in danger of falling, and the part whose fall would be most likely to do damage. To maintain it, or to leave it standing to its full height could serve no useful purpose. Its condition in reference to fitness for use was an undisputed fact on the evidence. Instead of being a part of a building adapted to occupation it was a part of the ruins of a building. To maintain such a wall after the expiration of a reasonable time for investigation and for its removal, would not be a reasonable and proper use of one's property. It was the duty of the defendant not to

suffer such a wall to remain on his land where its fall would injure his neighbor, without using such care in the maintenance of it as would absolutely prevent injuries, except from causes over which he would have no control, such as *vis major*, acts of public enemies, or wrongful acts of third persons which human foresight could not reasonably be expected to anticipate and prevent. This was the rule of law stated by the judge to the jury. With this construction of the charge we think that the jury were rightly directed to a consideration of the evidence on the principal issue of fact.

The jury were instructed to allow interest on the amount of damages from the date of the injury. It would have been more accurate to instruct them that in assessing damages of this kind a plaintiff is not to be awarded interest as interest, but that in ascertaining the damage at the date of the verdict, the jury should take into account the lapse of time and put the plaintiff in as good a position in reference to the injury as if the damages directly resulting from it had been paid immediately. *Frazer* v. *Bigelow Carpet Co.* 141 Mass. 126. This principle would authorize the jury to fix the damages at the date of their verdict by adding interest at the legal rate on the amount of damages at the time of the injury, but it would not require them to do this. There might be circumstances such that an allowance less than interest at six per cent would compensate for the delay. The damages in this case were of a different character from the amount to be awarded for the taking of land under the right of eminent domain, in which the value of the property rights taken should be paid at the time of the taking. See *Old Colony Railroad* v. *Miller*, 125 Mass. 1, 3.

But it does not appear that there was anything in this case to take it out of the ordinary rule in regard to compensation for a delay in payment by the allowance of interest. In the absence of anything in the bill of exceptions to show that the defendant was injured by the instruction, we are of opinion that a new trial should not be granted.

The defendant made many requests for instructions which we do not think it necessary to consider more particularly.

*Exceptions overruled.*