CHARLES F. WOODMAN *vs.* HARVEY N. SHEPARD, trustee.

Suffolk. January 14, 1921. — March 10, 1921.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & JENNEY, JJ.

*Negligence,* Of one owning or controlling real estate.

If the owner of a five-story building with tenants upon every floor retains control of a janitor's room on the second floor and of common halls, passenger and freight elevators and has a janitor upon the premises substantially all the time, he is liable to a traveller upon an adjacent highway for personal injuries caused by his being struck by a large sign, which the owner had permitted the tenant of the third floor to place on the wall outside the floor let to him and extending in part upon the wall outside of the janitor's room below and of the well of the freight elevator, and which fell by reason of the fastenings having become defective.

Evidence tending to show that the sign above described had been placed on the building in 1898 and was supported by irons, that nothing had been done to it or its supporting irons since that time, and that, to maintain the sign safely, it was necessary to paint the irons at intervals of one or two years and to renew them every five or six years, will warrant a finding that the sign, which fell in 1912, did so by reason of negligence of the defendant in allowing its fastenings to become defective.

TORT for personal injuries received on June 13, 1912, when the plaintiff, a traveller on Portland Street in Boston, was struck by a sign which fell from a building owned by the defendant. Writ dated October 22, 1915.

In the Superior Court, the action was tried before *Hall,* J.

The record states: "The plaintiff, for the purpose of showing the control of the defendant over that portion of the premises upon which the sign in question was placed, offered a certain insurance policy issued by the London Guarantee and Accident Company to the defendant, . . . which insured the defendant

against liability 'accidently suffered by any person or persons while within the premises of the assured as described in the schedule therein or on the premises or ways adjacent thereto.'" The defendant, although denying control, objected to such evidence on the ground that it was incompetent, and it was stipulated and agreed that the fact that the defendant carried such insurance, and all or any of the .provisions of the policy might be considered upon the question of liability if the same were competent.

Other material evidence introduced and offered and agreed to is described in the opinion. Upon the evidence introduced and offered and agreed to, the judge, upon motion of the defendant, ruled that the plaintiff could not maintain his action and ordered a verdict for the defendant and reported the case to this court for determination with the stipulation that if upon the evidence introduced and the competent and admissible evidence offered his ruling and order were right, then judgment should be entered for the defendant upon the verdict; but if they were wrong, judgment should be entered for the plaintiff in the sum of $10,000.

*A. T. Johnson,* (*A. L. Woodman* with him,) for the plaintiff.

*H. S. Avery,* (*C. S. Knowles* with him,) for the defendant.

Jenney, J. The plaintiff, on June 13, 1912, while a traveller upon the sidewalk of Portland Street, a highway in Boston, was struck and severely injured by a heavy sign which fell from the front of a five-story building owned by the defendant. It is conceded that the plaintiff was in the exercise of due care, and that it properly could have been found that the falling of the sign was caused by the negligent manner in which it had been maintained in position on the building. The question is, whether the defendant was liable for this injury.

The first floor of the building had three stores, all entered from the sidewalk. There were two other entrances from the street, one of which led into a common hallway controlled by the defendant, in which were situated a stairway and elevator well, both extending from the street floor to the roof; the other led directly from the sidewalk into an opening wherein was a freight elevator. The passenger elevator was operated by the defendant, and that for freight was used in common by all the tenants in the building. On the second floor at the front, and directly over the street entrance to the common hallway, was a room used by the defend-

ant's janitor. The remainder of this floor, except the hallway, stair and elevator spaces, was occupied by a tenant named Foster. The third floor was leased to and occupied by the Boston Furnace Company, and the floors above by another tenant. No tenant occupied or controlled the part of the building used for stairways, common hallways or elevator wells.

The sign that caused the injury had been placed upon the outside of the building by the Boston Furnace Company. It was fifty-four feet in length and about three and one half feet in width. It was so placed that it covered about fifteen inches of the wall below the floor leased to the Boston Furnace Company. Because of its length, it extended not only over a portion of the space occupied by the well of the freight elevator, but also over the janitor's room. The defendant had permitted the placing and maintenance of the sign upon the outside wall of his building partly upon the portions of that wall not adjacent to leased premises, and which were wholly within his control.

The Boston Furnace Company had been in possession of the third floor from about 1898, and had placed the sign in position at that time. It first entered upon the premises under a written lease, and had been in continuous occupation ever since, always under the terms of written leases, which were renewed from time to time. The lease under which it held possession when the accident occurred, was dated October 26, 1911, and its term was for three years from December 31, 1911.

There was evidence that the sign was in the same condition as upon the day when the last lease was signed, except for changes due to the weather; and so far as was known to the person who was manager of the Boston Furnace Company, it was in the same condition as it was when first put up.

Even if the owner was not negligent in allowing the sign to be so placed, the jury could have found that he was negligent in allowing it to remain there without any examination as to its safety, or precaution to prevent its fall which might have been found to have been caused by the failure to paint or renew the irons holding the sign in place. Upon the evidence admitted and the competent evidence offered, a finding would have been justified that it was necessary to paint these irons at intervals of one or two years, or to renew them every five or six years, in order

to maintain the sign safely. There was evidence from which it could have been found that nothing had been done in regard to the sign or its supporting irons since it was first put up. The defendant's janitor was upon the premises substantially all of the time.

Although separate parts of the building had been leased to different tenants, the defendant had general supervision, the entire control of outside doors and the passageways, and of the outer walls where they did not adjoin leasehold interests. As to such parts of the building, the owner is responsible to third persons for damages caused by a defective condition of the wall negligently created or suffered by him to exist; he is also liable for negligence in permitting a sign to be so improperly attached or maintained upon that part of the outer walls that it is liable to and does fall thus causing injury to a traveller exercising due care. *Kirby* v. *Boylston Market Association*, 14 Gray, 249. *Milford* v. *Holbrook*, 9 Allen, 17. *Gray* v. *Boston Gas Light Co.* 114 Mass. 149. *Khron* v. *Brock*, 144 Mass. 516. *Rockport* v. *Rockport Granite Co.* 177 Mass. 246, 255. *Ainsworth* v. *Lakin*, 180 Mass. 397, 400. *Brewer* v. *Farnam*, 208 Mass. 448. *Marston* v. *Phipps*, 209 Mass. 552. It was said in *Gray* v. *Boston Gas Light Co. supra*, at page 153: "The owner of a building, under his control and in his occupation, is bound, as between himself and the public, to keep it in such proper and safe condition, that travellers on the highway shall not suffer injury. [Cases cited.] It is the duty of the owner to guard against the danger to which the public is thus exposed, and he is liable for the consequences of having neglected to do so, whether the unsafe condition was caused by himself or another. *Coupland* v. *Hardingham*, 3 Camp. 398. Nor can the owner protect himself from liability, because he did not in fact know that the building was unsafe; he is bound to exercise the proper care required under the circumstances of the case."

It is not necessary to consider the respective rights and obligations of the lessor and lessee in the outer wall where, as in this case, the leased premises are described as a floor of a building. See *Lowell* v. *Strahan*, 145 Mass. 1; *Raynes* v. *Stevens*, 219 Mass. 556; *Conahan* v. *Fisher*, 233 Mass. 234.

The defendant's liability under the doctrine of *Watriss* v. *First National Bank of Cambridge*, 124 Mass. 571, need not be decided.

See also *McIver* v. *Estabrook,* 134 Mass. 550; *Dalay* v. *Savage,* 145 Mass. 38; *Ainsworth* v. *Lakin, supra.*

The admissibility of the policy insuring the defendant against liability is immaterial, as the plaintiff was entitled to go to the jury apart therefrom.

The direction of a verdict for the defendant was wrong, and in accordance with the report "judgment is to be entered for the plaintiff in the sum of $10,000."

*So ordered.*