ARTHUR M. KAUFMAN *vs.* BOSTON DYE HOUSE, INC.

MAX GOLDEN *vs.* SAME.

ARTHUR M. KAUFMAN & another *vs.* SAME.

Middlesex.   December 11, 1931. — September 12, 1932.

Present: RUGG, C.J., PIERCE, WAIT, & FIELD, JJ.

*Dangerous Substance.   Proximate Cause.   Actionable Tort.*

The proprietor of a business of cleansing garments and household goods, in which was used varnolene, an inflammable petroleum product having a flashing point of one hundred eight degrees Fahrenheit, was *held* not to be liable in an action of tort for damages caused to buildings on premises bordering on a creek by the igniting on the creek's surface, from sparks emitted from a gasoline engine, ten feet from the creek and operated by a third person not employed by nor associated with such proprietor and not on his premises, of varnolene which came to the surface of the creek from the premises of such proprietor but not by reason of negligence of such proprietor or of the maintenance of a nuisance by him.

THREE ACTIONS OF TORT, with a declaration described in the opinion. Writ in the first two actions dated

March 20, 1928, and, in the third action, dated January 8, 1930.

In the Superior Court, the actions were tried together before *C. H. Donahue,* J. Material evidence and verdicts found by the jury and a verdict ordered by the judge are described in the opinion. The plaintiffs alleged exceptions.

*F. W. Campbell,* for the plaintiffs.

*J. J. Kaplan,* for the defendant.

RUGG, C.J. These three actions of tort were tried together. They are brought to recover damages for injury to property of the plaintiffs by fire alleged to have been caused by the ignition on property not belonging to the defendant, by sparks or flames from a gasoline engine operated on property of a third person, of an inflammable petroleum product called varnolene discharged into Saugus. Branch Creek by the defendant. These actions were tried with other actions founded on negligence brought by the same plaintiffs against the operator of the gasoline engine, which are not now before us. The declaration in each of the cases at bar contained three counts, the first alleging that the defendant negligently permitted varnolene to escape into the creek, the second alleging that the defendant created a nuisance by allowing the escape of varnolene into the creek, and the third alleging that varnolene was an inherently dangerous substance which the defendant was bound at its peril to prevent from escaping. In each case the first and second counts were submitted to the jury and verdicts were returned for the defendant, and the trial judge directed a verdict for the defendant on the third count. Exception by the plaintiffs to that direction presents the question to be decided.

It is not necessary further to recite the allegations of the third count in the several declarations. The question is whether the evidence would support a finding on it in favor of the plaintiffs. That question is to be considered dissociated from negligence or nuisance for which the defendant was responsible, because those grounds of liability were covered by the other counts and it is to be presumed that

those grounds of liability were submitted to the jury under full and accurate instructions.

There was evidence which, although sharply contradicted in some essential particulars, nevertheless, in its aspect most favorable to the plaintiffs would have supported findings that the plaintiffs owned or occupied as tenants property in Malden bordering on Saugus Branch Creek; that the defendant carried on its business on adjacent property, in the rear of which although not contiguous thereto flowed the creek; that varnolene is an inflammable petroleum product widely used in the arts and industries, having a flashing point of one hundred eight degrees Fahrenheit (flashing point meaning that if "heated to that point it will vaporize and that if there is a spark nearby that has a little fire in it and if there are other conditions that are equal you are apt to have a flame, a fire"); that varnolene was used by the defendant in its business of cleansing garments and household goods; that, although great care was taken to reclaim as much as possible of varnolene for reuse and there was no leak in the pipes, some was spilled in taking clothes from the washer, and prior to the fire quantities of varnolene passed through a drain maintained by the defendant, usually kept plugged, but open about twice a week, to a catch basin in the defendant's yard and thence from its premises through a pipe leading to the creek several hundred feet east of the street on which the real estate occupied by the plaintiffs was located and in the rear of buildings owned or occupied by the plaintiffs; that this passing of varnolene was in violation of a prohibitory regulation of the department of public safety; that the natural flow of the creek from this drain was westerly by and under said buildings; that about five o'clock in the afternoon of January 5, 1928, when the temperature was below the freezing point of water, this petroleum product became ignited from sparks from a gasoline engine operated about ten feet from the creek by Coleman Bros., Incorporated; that that corporation was building a new channel for the creek, upon land taken by the city of Malden for that purpose, by virtue of a contract with the city of Malden

and was and had been for several days prior to the fire operating the gasoline engine in connection with that work in order to pump water from a well dug near the creek (into which drains emptied) into the creek through a trough extending part way, and that the fire, having thus originated, spread over the surface of the creek to buildings occupied or owned by the plaintiffs and caused them damage. There is no evidence and no contention that Coleman Bros., Incorporated, was operating upon land of the defendant, or under its authority or direction, or by virtue of any relation with it. There was testimony from an expert called by the plaintiffs to the effect that, in the conditions stated as prevailing on the creek, including temperature at the time of the fire, it was not likely that a fire would be caused by sparks from the gasoline engine or by red hot iron, but that, if a large enough piece of wood or missile in flames were thrown into the creek, vaporization of the petroleum product would be very apt to follow and a flame might ensue. Apparently, the way in which the ignition came from the gasoline engine was by sparks from its exhaust. The only evidence on this point in the record is that the gasoline engine was "skipping" or "backfiring" at the time of the fire and had been doing so previously for several days, and that a flare eight inches long came from the exhaust pipe. There is in the record no other evidence as to how the varnolene on the creek could have been vaporized on the day in question and set on fire. There is no evidence as to the exact location of the gasoline engine, but presumably it was on land of the city. It does not appear to have been upon land of the plaintiffs.

The verdicts of the jury in favor of the defendant on counts 1 and 2 of the declarations established as a fact that ignition of varnolene in the creek, if and so far as causing damage to property of the plaintiffs, was not due to the negligence of the defendant or to the creation of a nuisance by the defendant. Negligence and nuisance, therefore, are eliminated as a basis of liability. The cases at bar are quite distinguishable from cases like *Dulligan* v. *Barber Asphalt Paving Co.* 201 Mass. 227, *Ogden* v. *Aspin-*

*wall*, 220 Mass. 100, 103, *Leahy* v. *Standard Oil Co. of New York*, 224 Mass. 352, 361–363, and *Perlman* v. *Burrows*, 270 Mass. 182, 184, where, when culpability by negligence on the part of the defendant had been found to exist, it was held to be immaterial whether the harmful result was the natural and probable consequence of the culpable conduct. They are also distinguishable from cases like *Flynn* v. *Butler*, 189 Mass. 377, 386–387, *Jones* v. *Great Barrington*, 273 Mass. 483, 488, *Midwood & Co. Ltd.* v. *Mayor, Aldermen, & Citizens of Manchester*, [1905] 2 K. B. 597, and *Charing Cross Electricity Supply Co.* v. *Hydraulic Power Co.* [1914] 3 K. B. 772, where liability of the defendant was established on the ground of nuisance.

The plaintiffs contend that liability of the defendant to them rests or may be found to rest upon the facts that the defendant brought quantities of varnolene upon its premises and permitted it to escape, that it vaporized and ignited, and that damage by fire to their property ensued as a consequence. They make this contention even though the defendant was not negligent and created no nuisance with respect to the varnolene. The situation, then, is this: The defendant was using a lawful though highly inflammable substance in conducting a lawful business; some of that substance escaped from the premises of the defendant, without negligence and without creating a nuisance, found its way to the surface of the creek, there became ignited by the gasoline engine of Coleman Bros., Incorporated, operated for an independent purpose on land of a third person, fire spread over the surface of the creek and thereby property of the plaintiffs was damaged.

The plaintiffs base their contention on the rule formulated by Blackburn, J., in *Fletcher* v. *Rylands*, L. R. 1 Ex. 265, 279, and expressly affirmed in *Rylands* v. *Fletcher*, L. R. 3 H. L. 330, 339–340. That rule is that "the person who for his own purposes brings on his lands and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril, and, if he does not do so, is primâ facie answerable for all the damage which is the natural consequence of its escape." Another more recent

statement of the rule by the English courts is in *Rainham Chemical Works, Ltd.* v. *Belvedere Fish Guano Co. Ltd.* [1921] 2 A. C. 465, 471, in these words: "even apart from negligence the use of land by one person in an exceptional manner that causes damages to another, and not necessarily an adjacent owner, is actionable." There have been limitations upon the wide sweep of this principle even in English decisions. *Wilson* v. *Newberry*, L. R. 7 Q. B. 31. *Ross* v. *Fedden*, L. R. 7 Q. B. 661. *Nichols* v. *Marsland*, L. R. 10 Ex. 255; *S. C.* 2 Ex. D. 1. *Box* v. *Jubb*, 4 Ex. D. 76. *Baker* v. *Snell*, [1908] 2 K. B. 825. *Rickards* v. *Lothian*, [1913] A. C. 263, 275–282. *Noble* v. *Harrison*, [1926] 2 K. B. 332, overruling *Gill* v. *Edouin*, 71 L. T. Rep. 762. *Phillips* v. *Britannia Hygienic Laundry Co. Ltd.* [1923] 1 K. B. 539; affirmed in [1923] 2 K. B. 832. *Smith* v. *Great Western Railway*, 42 T. L. R. 391. *St. Anne's Well Brewery Co.* v. *Roberts*, 140 L. T. Rep. 1, 6. *Wilkins* v. *Leighton*, [1932] 2 Ch. D. 106. See also *Brown* v. *Collins*, 53 N. H. 442; *Marshall* v. *Welwood*, 9 Vroom, 339; *Losee* v. *Buchanan*, 51 N. Y. 476. The rule of liability in this Commonwealth was stated in *Ainsworth* v. *Lakin*, 180 Mass. 397, 399–401, where the court, speaking through Knowlton, J., said: "There is a class of cases in which it is held that one who, for his own purposes, brings upon his land noxious substances or other things which have a tendency to escape and do great damage, is bound at his peril to confine them and keep them on his own premises. This rule is rightly applicable only to such unusual and extraordinary uses of property in reference to the benefits to be derived from the use and the dangers or losses to which others are exposed, as should not be permitted except at the sole risk of the user. The standard of duty established by the courts in these cases is that every owner shall refrain from these unwarrantable and extremely dangerous uses of property unless he provides safeguards whose perfection he guarantees. The case of *Rylands* v. *Fletcher*, L. R. 3 H. L. 330; *Fletcher* v. *Ryalls*, L. R. 1 Ex. 265, rests upon this principle. In this Commonwealth the rule has been applied to the keeping of manure in a vault very near the well and

the cellar of a dwelling house of an adjacent owner. *Ball v. Nye*, 99 Mass. 582. See also *Fitzpatrick* v. *Welch*, 174 Mass. 486. That there are uses of property not forbidden by law to which this doctrine properly may be applied is almost universally acknowledged. This rule is not applicable to the construction and maintenance of the walls of an ordinary building near the land of an adjacent owner. . . . The duty which the law imposes upon an owner of real estate in such a case, is to make the conditions safe so far as it can be done by the exercise of ordinary care on the part of all those engaged in the work. He is responsible for the negligence of independent contractors as well as for that of his servants. This rule is applicable to every one who builds an ordinary wall which is liable to do serious injury by falling outside of his own premises. It is the rule on which the decision in *Gorham* v. *Gross*, 125 Mass. 232, rests, and the case is not an authority for any liability of a landowner that goes beyond this. See also *Gray* v. *Harris*, 107 Mass. 492; *Shrewsbury* v. *Smith*, 12 Cush. 177. The uses of property governed by this rule are those that bring new conditions which involve risks to the persons or property of others, but which are ordinary and usual and in a sense natural, as incident to the ownership of the land. The rule first referred to applies to unusual and extraordinary uses which are so fraught with peril to others that the owner should not be permitted to adopt them for his own purposes without absolutely protecting his neighbors from injury or loss by reason of the use. In England this rule which was laid down in *Rylands* v. *Fletcher, ubi supra,* in reference to a reservoir of water, has since been held to be inapplicable where the collection of the water is in the natural and ordinary use of the land. *Fletcher* v. *Smith*, 2 App. Cas. 781. See *Carstairs* v. *Taylor*, L. R. 6 Ex. 217." *Shipley* v. *Fifty Associates*, 106 Mass. 194. *Wilson* v. *New Bedford*, 108 Mass. 261. *Mears* v. *Dole*, 135 Mass. 508. *Sponatski's Case*, 220 Mass. 526, 531. *Opinion of the Justices*, 251 Mass. 569, 597. Certainly, no one of our decisions, either in phraseology of the principle or in its application, goes beyond the original statement of the rule

as already quoted from *Fletcher* v. *Rylands*. The ordinary rules of negligence and nuisance afford adequate relief according to accepted principles of justice, at least in the greater part of the wide field of injury. *Hinds* v. *Steere*, 209 Mass. 442.

The plaintiffs rightly rest their cases on the rule of *Rylands* v. *Fletcher*. This position is necessary because the verdicts on counts 1 and 2 show that the defendant was not negligent and created no nuisance. There are several factors to be observed. The defendant made no use of its land "in an exceptional manner." It does not appear that its cleansing business was conducted in any "unusual and extraordinary" way. It is a common and useful business. The use of its property by the defendant was not "unwarrantable and extremely dangerous." The petroleum product which escaped from the defendant was an article widely used in industry. It was in itself no more dangerous than many other materials in general use in commerce, industry and the home. It was properly employed by the defendant in the conduct of a lawful business. It caused no injury by its mere escape to the surface of the creek. No harm of the nature complained of by the plaintiffs was to be expected from its escape. There is no evidence that under existing conditions any one had reason to apprehend ignition of the varnolene on the surface of the creek at the time and place of the fire. There is no evidence in the record to support a conclusion that the defendant had ground to anticipate that the gasoline engine of Coleman Bros., Incorporated, operated on land of another at some distance from the creek, would be "skipping" or "backfiring" in circumstances capable of igniting the varnolene in the conditions shown. It is an unusual circumstance that such an element of danger should be present. That which happened was quite outside the common experience of mankind. But for the intervention of the gasoline engine of a stranger on land of another engaged in a public enterprise, the escape of the varnolene would have caused no damage so far as disclosed by the record.

The rule upon which the plaintiffs rely, as already stated,

imposes absolute liability upon a defendant only when the resulting damage is the "natural consequence" of the escape of the dangerous thing. There is nothing in the present record to warrant a finding that the ignition of the varnolene as shown was a "natural consequence of its escape" from the premises of the defendant. On this point the cases at bar fall within the authority of numerous decisions. *Stone* v. *Boston & Albany Railroad,* 171 Mass. 536. *Bellino* v. *Columbus Construction Co.* 188 Mass. 430. *Gibson* v. *International Trust Co.* 186 Mass. 454. *McIntire* v. *Roberts,* 149 Mass. 450, 453–454. *Snow* v. *New York, New Haven & Hartford Railroad,* 185 Mass. 321. *Leavitt* v. *Fiberloid Co.* 196 Mass. 440, 446–448. *Horan* v. *Watertown,* 217 Mass. 185. *Lowrie* v. *Castle,* 225 Mass. 37, 49. *Falk* v. *Finkelman,* 268 Mass. 524, 527. *Palsgraf* v. *Long Island Railroad,* 248 N. Y. 339. *The Glendola,* 47 Fed. Rep. (2d) 206. *Cattle* v. *Stockton Waterworks Co.* L. R. 10 Q. B. 453.

The cause of injury to the plaintiffs was not the escape of varnolene from the defendant; it was the setting on fire of that substance after its escape, under conditions unlikely to produce ignition, by the intervening act of a third person. That intervening act was not of such a kind that the defendant could have foreseen it. If that act were negligent or malicious, it hardly would be contended that the defendant would be liable. *Box* v. *Jubb,* 4 Ex. D. 76. We think that even though that act were innocent, provided it could not reasonably have been anticipated, there is no liability on the part of the defendant in the circumstances here disclosed. See *Stearn* v. *Prentice Brothers, Ltd.* [1919] 1 K. B. 394.

It is not necessary to consider the scope of the doctrine of absolute liability of the landowner for escape from his premises of anything likely to do mischief when he is free from negligence and has created no nuisance.

In each case the entry may be

*Exceptions overruled.*