ARTHUR G. BRATTON *vs.* MORRIS RUDNICK.

LILLIAN A. TALLMADGE *vs.* SAME.

FANNIE WRIGHT *vs.* SAME.

Berkshire. September 20, 1932. — July 3, 1933.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Negligence,* Of owner of dam, Damnum absque injuria. *Proximate Cause. Dangerous Substance. Actionable Tort.*

An action of tort against the owner of a dam and headgate to recover for damage sustained by the plaintiff when waters broke through the headgate, could not be maintained on the ground of negligence of the defendant where, from findings by an auditor to whom the action was referred under a rule requiring that his findings of fact should be final, it appeared that the defendant was negligent in the maintenance of the headgate, but that the damage to the plaintiff would have ensued, owing to prevailing flood conditions, even if there had been no such negligence, although such damage might have been retarded somewhat if the defendant had not been negligent; and that the plaintiff had not sustained the burden of proving that the defendant's negligence was a contributing cause of his damage.

One who sustained damage by reason of the breaking of a headgate adjacent to a dam was not entitled to maintain an action of tort against the owner of the dam and headgate on the ground that he thus collected and stored water at his peril, where it was found by an auditor, to whom the action was referred under a rule requiring that his findings of fact should be final, that the break was caused in a storm with a rainfall twice as great as any disclosed by easily

available records in that part of the country, "extraordinary and unprecedented," "so notoriously great as properly to be characterized as phenomenal" and "such that human foresight could not reasonably be expected to anticipate," such a rainfall being *vis major* or an act of God.

THREE ACTIONS OF TORT. Writs dated November 9, December 3 and December 3, 1927.

The declarations are described in the opinion. The actions were referred to the same auditor under a rule requiring that his findings of fact should be final. Material facts found by him are described in the opinion.

After the filing of the auditor's reports, the actions were heard together in the Superior Court by *Fosdick*, J., who allowed motions by the defendant for judgment in his favor. The plaintiffs alleged exceptions.

*E. D. Getman*, (*W. A. O'Hearn* with him,) for the plaintiffs.

*C. H. Wright*, (*B. F. Evarts* with him,) for the defendant.

RUGG, C.J.   These actions of tort are brought to recover compensation for damages to property alleged to have arisen because the defendant, owner of a dam, bulkhead, headgate, and underground sluiceway across Green River in Williamstown with the right to maintain the same and their appurtenances to conduct the impounded waters to a mill owned by him, in fact maintained them in a defective condition with the result that they gave way, and the escaping waters caused damages to the property of the several plaintiffs.   Each declaration contained two counts, the first founded upon negligence of the defendant and the second on the theory that the defendant as owner of the dam built to confine the waters of the river for his own uses owed to the plaintiff the duty to maintain his dam in a proper and safe condition so as to prevent the escape of such waters to the harm of the plaintiff.

The cases were referred to an auditor, whose findings of fact were to be final.   The cases were then heard upon motions for favorable judgment by each of the several parties. Requests for rulings were presented and passed upon subject to exception.   Judgment was ordered for the defendant

in each case. The questions presented are whether there was reversible error of law in dealing with the requests for rulings ·and whether the orders for judgment can be supported on the findings of facts made by the auditor. The general finding in favor of the defendant imports the drawing of all reasonable inferences to uphold that conclusion of which the findings of fact are susceptible. *Merrimac Chemical Co.* v. *Moore,* 279 Mass. 147, 152. *Ballou* v. *Fitzpatrick, ante,* 336. *Atlantic Maritime Co.* v. *Gloucester,* 228 Mass. 519, 521–522. Rule 88 of Superior Court (1932).

The findings of fact set forth in the auditor's report in brief are that Green River is about eight miles in length, flows through a country most of which is hilly and some of which is mountainous, in places is swiftly flowing and is of such nature that it rises rapidly during a freshet. The dam of the defendant is ninety-seven feet in length and is constructed across a ledgy gorge. About one hundred yards above the dam of the defendant there is another dam across the river. Adjacent to the dam of the defendant· was a ·bulkhead "constructed of 8 x 8 timbers" mortised together and about eighteen feet square. At its entrance was a rack designed to keep out leaves, sticks and other debris which otherwise might flow into the headgate and sluiceway. About in the middle of the bulkhead was the headgate four feet high and five feet wide, covering the entrance to the sluiceway, which was two feet high and five feet wide and through which when the headgate was raised the .water passed to the mill several hundred feet below, where it furnished power for the operation of the mill. On the night of November 4, 1927, as the result of a storm which had continued about two days beginning on November 2, 1927, the waters of Green River broke through the bulkhead adjacent to the dam of the defendant thereby causing damages to the plaintiffs. The total rainfall during this storm was more than six inches and "was substantially larger than that in any other storm . ·. . referred to in the evidence; in fact its volume was fully twice as great as that in any other rain regarding which a record was produced, or any· witness testified from ·recollection. The storm might

properly be described as extraordinary and unprecedented." It was "so notoriously great as properly to be characterized as phenomenal," and "was such that human foresight could not reasonably be expected to anticipate." The water rose to so great height that it flowed in substantial volume over the entire length of the spillway of the defendant's dam. Some of this water reached the earth back of the bulkhead and undermined and weakened it so that it gave way, although the dam itself stood firm. The ultimate conclusions of the auditor were these: Even if the headgate (which was closed) had been open and the sluiceway in good repair, the pressure of the water at the bulkhead would have been relieved to so slight an extent that the damage would not have been prevented. The defendant was negligent in the maintenance of the headgate and planking. If there had been no such negligence, although the injury to the plaintiffs might have been somewhat retarded, it would nevertheless have ensued owing to the prevailing flood conditions. The plaintiffs did not sustain the burden of proving that this negligence was a contributing cause of their damage.

The finding that the negligence of the defendant was in no way a contributing cause to the damage of the several plaintiffs is decisive that there can be no recovery on the first count in each of the declarations. Negligence which does not actually cause or contribute to injury cannot be the basis of liability. Such negligence has no causal connection with the harm to the plaintiff, and is immaterial on the question of responsibility for damages. If subsequently to the negligence of the defendant there intervenes another proximate active and efficient cause operating independently to produce injury to the plaintiff, there can be no recovery from the defendant. *Gordon* v. *Bedard,* 265 Mass. 408, 412. *Smith* v. *Locke Coal Co.* 265 Mass. 524, 527. *O'Connor* v. *Hickey,* 268 Mass. 454, 459. *Falk* v. *Finkelman,* 268 Mass. 524, 527. *Fielding* v. *S. Z. Poli Realty Co.* 274 Mass. 20, 22. *Wright* v. *Woodward,* 79 N. H. 474, 479.

It follows that the first and third requests for rulings by the defendant, to the effect that on the auditor's report the

plaintiffs could not recover on the first count in their declarations and that judgment should be entered in his favor, were granted rightly.

The plaintiffs base their contention of right to recover on the second counts of their declarations on the principle enunciated with respect to a defendant who had built and maintained a reservoir in *Fletcher* v. *Rylands*, L. R. 1 Ex. 265, 279, affirmed in *Rylands* v. *Fletcher*, L. R. 3 H. L. 330, 339–340, in these words: "the person who, for his own purposes, brings on his land and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril; and if he does not do so, is *primâ facie* answerable for all the damage which is the natural consequence of its escape." There have been limitations upon the wide sweep of that principle by the English courts. (See *Attorney General* v. *Corke*, [1933] 1 Ch. 89.) That principle has been examined and cited in numerous instances in our decisions. It was discussed with his usual clearness, wisdom and learning by Knowlton, J., speaking for the court, in *Ainsworth* v. *Lakin*, 180 Mass. 397. That principle, so far as it has been adopted and was relevant, was applied in *Kaufman* v. *Boston Dye House, Inc.* 280 Mass. 161, decided within a few months, with review of the English cases and our own adjudications. It is not now necessary again to go over the same ground. The rule there deduced in substance was that in general where one for his own purposes makes an unusual and extraordinary use of his land, in reference to the benefits to be derived therefrom by himself and the damages or losses to which others are thereby exposed, by bringing, collecting or keeping upon it anything possessed of a tendency, according to the reasonable anticipations of mankind with respect to such a hazard, to escape and do great damage, he is bound at his peril to confine and restrain it to his own premises and is liable to actions for injuries resulting as a natural consequence from his failure of duty in this particular. In discussing the scope of the general principle in the opinion in *Gorham* v. *Gross*, 125 Mass. 232, it was said by Chief Justice Gray, at page 238, that recognized exceptions to the

liability imposed by the rule of *Rylands* v. *Fletcher*, L. R. 3 H. L. 330, were where the escape of the dangerous thing was due to "the plaintiff's own fault, or of *vis major*, the act of God, or the acts of third persons, which the owner had no reason to anticipate." To the same effect are *Nichols* v. *Marsland*, L. R. 10 Ex. 255; *Box* v. *Jubb*, 4 Ex. D. 76; *Carstairs* v. *Taylor*, L. R. 6 Ex. 217; *Sutliff* v. *Sweetwater Water Co.* 182 Cal. 34, 37.

The report of the auditor was in substance and effect that the storm and the resultant flood and damage were an exhibition of *vis major*, or the act of God. A rainfall twice as great as any disclosed by easily available records in this part of the country, "extraordinary and unprecedented," "so notoriously great as properly to be characterized as phenomenal" and "such that human foresight could not reasonably be expected to anticipate" falls within the range of that legal term. The giving way of the bulkhead of the defendant was due exclusively to an overwhelming agency beyond his control and above human restraint. This amounts to something more than mere descriptive epithets and declamatory words. It states definite physical facts. *Foley* v. *Boston & Maine Railroad*, 193 Mass. 332, 335. So far as pertinent to the facts here disclosed, *vis major*, or act of God, is the action of an irresistible physical force, or the violence of natural phenomenon, not attributable to the conduct of man, not referable to participation by man through unreasonable failure to anticipate danger or to put forth protective instrumentalities, and overpowering all preventive measures exacted by the wisdom and foresight of prudent men in the light of the warnings of experience and the observations of general climatic conditions, prevailing customs, and all other available sources of information. *Hecht* v. *Boston Wharf Co.* 220 Mass. 397, 402. *Cork* v. *Blossom*, 162 Mass. 330, 332–333. *Gleeson* v. *Virginia Midland Railroad*, 140 U. S. 435, 439. *The Majestic*, 166 U. S. 375, 386. *Nugent* v. *Smith*, 1 C. P. Div. 19, 34. *Lyon* v. *Chicago, Milwaukee & St. Paul Railway*, 45 Mont. 33, 43. *Rocap* v. *Bell Telephone Co.* 230 Penn. St. 597, 603. *Porter Screen Manuf. Co.* v. *Central Vermont*

*Railway,* 92 Vt. 1, 11.  *American Locomotive Co.* v. *Hoffman,* 105 Va. 343, 349–351.  Adopting the "picturesque phrase," quoted in *Greenock Corp.* v. *Caledonian Railway,* [1917] A. C. 556, 572, a landowner in constructing a reservoir "is bound to provide against the ordinary operations of nature, but not against her miracles."

Cases like *Shipley* v. *Fifty Associates,* 106 Mass. 194, and *Davis* v. *Rich,* 180 Mass. 235, where the natural effect of the constructions of the defendants was to collect and discharge water to the injury of others, or like *Salisbury* v. *Herchenroder,* 106 Mass. 458, where the act of the defendant was itself contrary to law, or like *Gray* v. *Harris,* 107 Mass. 492, where the defendant failed to provide against extraordinary floods reasonably to be anticipated, or like *Wilson* v. *New Bedford,* 108 Mass. 261, where natural percolation of water through soil caused harm, or like *Mears* v. *Dole,* 135 Mass. 508, where excavations of the defendant let the sea into land of the plaintiff, or like *Bryant* v. *Bigelow Carpet Co.* 131 Mass. 491, where the liability of the defendant for the escape of impounded water rested on negligence, or like *Higgins* v. *Dewey,* 107 Mass. 494, and *Ogden* v. *Aspinwall,* 220 Mass. 100, where also the defendant was held liable for negligence, are distinguishable from the cases at bar.

Whether the doctrine of *Rylands* v. *Fletcher,* L. R. 3 H. L. 330, can be supported on the ground that the defendant as landowner on the facts there disclosed was responsible for the negligent acts of his contractor in constructing the reservoir, need not be considered.  *Gorham* v. *Gross,* 125 Mass. 232, 238.  *Cork* v. *Blossom,* 162 Mass. 330, 333.  *Nugent* v. *Boston Consolidated Gas Co.* 238 Mass. 221, 231.  *Levesque* v. *Hildreth & Rogers Co.* 276 Mass. 429, 434.  *McConnon* v. *Charles H. Hodgate Co.* 282 Mass. 584, 588.  See *Pickett* v. *Waldorf System, Inc.* 241 Mass. 569, 571, and cases collected.  Nor is it necessary to determine how far that doctrine is applicable to reservoirs for the production of water power in this Commonwealth, from early times encouraged by the legislation known as the mill acts.  *Talbot* v. *Hudson,* 16 Gray, 417, 426–427.  *Lowell* v.

*Boston,* 111 Mass. 454, 464–467. *Duncan* v. *New England Power Co.* 250 Mass. 228. *Opinion of the Justices,* 237 Mass. 598, 609–612.

On the facts found it is plain that the active and efficient cause of the damage to the several plaintiffs was the unprecedented and phenomenal rainfall and resultant flood condition. This was an exhibition of *vis major,* or an act of God. It falls under the·exception stated in *Gorham* v. *Gross,* 125 Mass. 232, to the rule invoked by the plaintiffs. It exonerates the defendant from liability to the plaintiffs under the second count in their several declarations.

It is not necessary to examine one by one the several requests for rulings. It follows from what has been said that there was no error in the action of the trial judge.

*Exceptions overruled.*