KARL CONREY *vs.* CARL M. ABRAMSON.

Middlesex.    April 8, 1936. — May 26, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Proximate Cause.    Negligence,* Motor vehicle, In use of way.

The fact, that the driver of a motor vehicle stopped on a public way in the process of crossing to the left side, as a matter of law could not be found to be negligence nor the proximate cause of personal injuries sustained by a passenger in a motor vehicle second behind him when it collided with a motor vehicle immediately behind him which, by his stopping, also had been caused to stop.

TORT. Writ in the Superior Court dated August 22, 1931.

The action was tried before *Walsh,* J.

The case was submitted on briefs.

*G. J. Tauro & J. Golant,* for the plaintiff.

*D. H. Fulton,* for the defendant.

CROSBY, J. This is an action of tort to recover for personal injuries, sustained by the plaintiff, arising out of a motor vehicle collision. At the close of the plaintiff's evidence, the defendant rested and filed a motion that a verdict be directed in his favor. The motion was allowed and the plaintiff excepted.

It appears from the record that on May 29, 1931, the plaintiff, while riding as an invited guest in the rear seat of an automobile driven by one Davis, just after dark, on Main Street, in the town of Reading in this Commonwealth, was thrown to the highway and received personal injuries. The automobile was travelling toward Boston. The roadway was straight for several hundred feet in both directions from the place of the accident. A sketch was introduced at the trial showing four lanes of travel on the highway. Lane 1 was at the extreme left and lanes 2, 3 and 4 were consecutively to the right of lane 1. Lanes 1 and 2 were used by vehicles coming from the direction of

Boston and lanes 3 and 4 by vehicles going in the opposite direction.

The plaintiff testified that he remembers getting into the automobile at a point about two to two and one half miles from the scene of the accident, but "does not remember anything else except seeing stars until he was in the hospital and saw the nurse." Davis, the driver of the automobile in which the plaintiff was riding, testified that he picked up two men, whom he did not know, at the crossing in Reading, while he was headed toward Boston; that he then drove straight ahead; that the road is divided into lanes; that the extreme right hand side of the road is cement, and the inside is a new nonskid road; that there are two lanes at each side; that when he was near Kimball's roadside stand there was some sort of accident; that as he went along the road he turned into the inside lane, which was the one nearer the middle of the road, when he was about a mile from Kimball's, and from there, up to the time of the accident, he travelled on the inside lane as far as he could remember; that there was an automobile in front of him, which he afterwards learned was driven by one Wing; that he was probably fifteen or twenty feet back of that automobile, going about thirty to thirty-five miles an hour; that there was traffic in the other lanes going both to and from Boston; that as he approached Kimball's he noticed Wing's automobile come to an abrupt stop; that he saw no signal other than Wing's stop light; that at that time "he saw no other car do anything except Mr. Wing's car stopped"; that he, Davis, started to swing his automobile to the left to go over to the other side and saw a bus coming, "in the center of the road, on its extreme right lane"; that when he saw the bus coming he stepped on his brakes and came back into lane 3 but skidded into Wing's automobile; that he was not in a position to see what happened to it when he hit it; that he did not see any automobile in front of Wing's until he got out, and then he saw one directly in front of Wing's automobile in lane 3, crossways on the road; that after the witness first observed the stop light or the sudden stopping of the Wing automobile it went about seven feet

before it came to a stop; that from the time the witness stepped on his brake until the collision, he went twenty or twenty-two feet; that he pushed the Wing automobile but does not know how far — there was quite an impact. This witness further testified that after the accident he had a talk with Wing who said "his car was at a stop when the witness hit him and that the witness pushed Wing's car into Abramson's car . . . that Abramson gave no warning when he started to turn." The witness further testified that "Abramson simply said it wasn't his fault." On cross-examination he testified that he did not see the Abramson automobile at any time until after the accident; that he "knows as a fact that Mr. Wing had time to stop his car and come to a complete stop before the witness came in contact with Wing." Wing testified that he thought Abramson's automobile was going to pull across in front of him — at the time of the impact it was headed toward Kimball's and he judged it was going to pull across the road; that he must have been five or six feet from it when he finally stopped and was struck by the other automobile; that when he was struck he thinks his automobile hit Abramson's slightly.

Although the evidence is close we are of opinion that it was not sufficient to warrant a finding of negligence on the part of the defendant. He was not bound to anticipate that after he had come to a stop, and another automobile had stopped behind him, a third automobile would strike the second and a passenger in the third would be injured. The evidence was not sufficient to warrant a finding that negligence of the defendant was the proximate cause of the plaintiff's injury. *Behmer* v. *Worcester Consolidated Street Railway,* 253 Mass. 494. *Falk* v. *Finkelman,* 268 Mass. 524, 527. *Perry* v. *Stanfield,* 278 Mass. 563, 571. *Kaufman* v. *Boston Dye House, Inc.* 280 Mass. 161, 169. *Bratton* v. *Rudnick,* 283 Mass. 556, 559. *Morrison* v. *Medaglia,* 287 Mass. 46, 51. A verdict was rightly directed for the defendant.

*Exceptions overruled.*