LEE MacKENZIE *vs.* FITCHBURG PAPER COMPANY
& another.

Worcester. May 3, 1966. — July 6, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Negligence,* Dangerous substance, Dump. *Dangerous Substance. Ultrahazardous Activity. Practice, Civil,* Charge to jury, New trial.

In an action against a manufacturing company and an individual hired by it to take waste solvents from its plant to a public dumping area to be disposed of by burning there, a finding of negligence on the part of both defendants toward the plaintiff was warranted by evidence that both defendants knew that the solvents were "dangerous and inflammable," that a large pool of the solvents was left burning in a hole without supervision despite a condition of permission for the burning that it be "attended and watched," and that while the plaintiff, having observed the fire "boiling and bubbling" and spreading, was endeavoring to throw sand on it to extinguish it, the sand gave way and he fell into the fire and was injured. [295–296]

In an action for personal injuries sustained by the plaintiff through alleged ultrahazardous conduct of the defendants in burning "dangerous and inflammable" waste solvents at a public dumping area, there was error in the judge's charge in applying the doctrine of *Rylands* v. *Fletcher*, L. R. 3 H. L. 330. [296–298]

Although the evidence at the trial of an action warranted a finding of negligence of the defendants toward the plaintiff and the judge correctly charged the jury on counts based on negligence, error in the charge with respect to the doctrine applicable to counts based on ultrahazardous conduct of the defendants, coupled with a reference to that doctrine as "the rule in this case," required a new trial following verdicts for the plaintiff on all counts.   [298]

TORT.  Writ in the Superior Court dated April 11, 1963. The action was tried before *Meagher, J.*

*Francis W. Conlin* for Fitchburg Paper Company.

*Stanley B. Milton* (*Robert C. Milton & Philip Salny* with him) for Joseph Cordio.

*Edward P. Bird* (*Philip J. Murphy* with him) for the plaintiff.

REARDON, J.  This is an action of tort to recover for personal injuries sustained by the plaintiff on November 19, 1958, in a fire on land owned by the city of Fitchburg.  The declaration as amended contained eight counts, four against each defendant.  The judge ordered verdicts for the defendants on four counts.  Four counts now remain, one against each defendant for personal injuries caused by negligence, and one against each defendant for injuries resulting from ultrahazardous activity.  The answers of the defendants include a general denial and allegations of contributory negligence and assumption of the risk.  Verdicts in the same amount for the plaintiff were returned on each of the four counts.  The case comes here on exceptions to the denial of separate motions by the defendants for a directed verdict on each count and on various other exceptions which it will not be necessary to discuss in full.

The evidence most favorable to the plaintiff is summarized as follows.  On the day of the accident the plaintiff, then aged sixteen, was employed as a full time meat packer and owned his own automobile, having left school. About 6 P.M., when it was almost dark, he drove to a sandbank area in a public dump owned by the city of Fitchburg to get a box of sand.  He was accompanied by his eight year old brother.  The area is reasonably accessible by automobile and is about 900 feet from the general dumping

area.   It was frequented by people, young and old, and was on occasion used as a shooting range.   Upon the plaintiff's arrival in the area he noticed a fire burning some distance away.   He walked over across level ground to the vicinity of the fire and perceived that it was burning in a hole some fifteen to twenty-five feet long and ten to fifteen feet wide. Near this hole he saw a sizable number of five gallon cans on some of which were stenciled the words, "Fitchburg Paper Company."   The fire which was in "a pool in the middle of the hole . . . was boiling and bubbling" and was spreading "to the other cans that were there."   With a spade that he had with him he endeavored to throw sand on the fire "to put it out" and to prevent its spreading to "bushes that were in back of the hole."   He was about five feet from the hole when " [t]he fire just came up at him."   The sand gave way and he fell into the hole.

Some weeks prior to, and again about a week before, November 19, 1958, the Fitchburg fire chief, pursuant to power lodged in him by a city ordinance, had ordered the plant superintendent of the Decotone Division of the defendant company to remove from its premises "a large accumulation of left-over or surplus inflammable fluids." These fluids were waste inks employed in the manufacturing processes of the company and were highly inflammable, having a flash point of under 100 degrees Fahrenheit.   The chief gave permission to the division's superintendent to make arrangements with the dump for the waste solvents to be disposed of by deposit and burning at the city property.   This permission was granted on the condition that "the burning at all times be attended and watched by company personnel."   On the day of the accident a city employee at the dump who had dug the hole under orders of his foreman saw two trucks, one labelled "Fitchburg Paper Company," dump chemicals into the hole.   The trucks came more than once to the dump during the day.   When the city employee left the premises at 4 P.M. there was a fire burning at the hole.

The defendant Joseph Cordio was ordinarily employed by the company for eight hours a day as a maintenance

man.   However, he owned a truck and conducted from time to time for the company dumping operations which took place outside his regular hours of employment and for which he billed the company at a stated charge.   On November 19, 1958, he transported liquid waste materials to the dump in his own truck.   He had arrived after the digging of the hole early in the day and was there observed by the city employee who had opened up the hole.   He knew that the waste solvents that he was handling were "dangerous and inflammable" and had seen a number of fires at the plant generated by static electricity involving inks such as those he was dumping.   Officers of the company knew that the solvents constituted a "dangerous and inflammable mixture" and so testified.   An expert for the plaintiff gave testimony that methyl isobutyl ketone, which was employed as a component in the inks, burned "explosively fast" and was more hazardous when burning in the open air.   The company itself took special fire precautions in the use of the inks in its manufacturing process.   Both the company and Cordio knew that other people used the dump area.

The plaintiff's medical and hospital bills for treatment of the injuries which he sustained totaled approximately $9,000.   The plaintiff pressed his action on two theories. He alleged negligence on the part of both defendants and, in addition, by amendments to his declaration which were allowed subject to the defendants' exceptions, some six days after the commencement of trial, he alleged that he sustained injury as a result of ultrahazardous activity on the part of both defendants.

There was ample evidence of negligence involving the defendants.   Both of them were aware of the dangerous nature of the materials which were being dumped.   Both took part in their abandonment in an area which was a portion of a public dump accessible by automobile.   Fires were common in other parts of the dumping area.   Cordio was employed to make trips to the dump and had done so on other occasions.   His testimony indicated that he usually dumped "the trash in Fitchburg" and that he was

familiar with conditions at the dump. He had seen fires at the company's plant involving the inks. The company had intimate knowledge of the dangers attendant on the use of the inks, had been given instructions by the fire chief to remove the surplus and inflammable wastes from the premises, and had been instructed to supervise the burning of them. While the evidence was not entirely clear as to the cause of the ignition of the solvents in the hole it was clear that a large pool of them had been left without supervision in an area where, as both defendants should have foreseen, there was a likelihood that if a fire were not started by them it could be ignited by some other person. There was evidence that a deceased employee of the defendant company, who assisted in the dumping process and who was present on the day of the accident, had as part of his duties the lighting of solvents when they were deposited in the dump. We are of opinion that there was sufficient evidence of negligence to take the case to the jury. *Sarna* v. *American Bosch Magneto Corp.* 290 Mass. 340, 342–343. Compare *Kaufman* v. *Boston Dye House, Inc.* 280 Mass. 161, 163–164, 168.

The charge of the judge adequately outlined the law of negligence, contributory negligence, and assumption of the risk by the plaintiff. The first portion of the charge dealing with negligence was satisfactory. The difficulty in this case arises from the second portion of the charge wherein the judge proceeded to a discussion of the question of possible ultrahazardous conduct by the defendants. We do not pass upon the question whether the record discloses that the plaintiff made out a case on his counts alleging ultrahazardous activity. We deal rather with the charge of the judge relating to it. Having discussed ultrahazardous conduct in terms of liability without fault, with allusions to the definitions by various authorities, and having read excerpts from a text on the law of torts, the judge then made this statement: "The rule in this case is referred to by lawyers by the name of the case, 'Rylands vs Fletcher,' an English case of many, many years ago. And he says

this: 'The rule of Rylands vs Fletcher, or liability for the collection in dangerous quantities of substances not naturally on the land; liability for blasting operations; liability for trespassing animals; liability incident to the keeping of dangerous animals; liability for the operation of aircraft; liability for some types of nuisances; liability for some types of misrepresentations; liability for the escape of fire originating on defendant's premises; poisonous sprays, insecticides, herbicides, defoliants.' "

At the conclusion of his charge counsel for the defendant Cordio stated, "And I want to take exception to the doctrine of Rylands vs Fletcher as being the law in this case." Three difficulties are apparent from the quoted language in the charge. First, *Fletcher* v. *Rylands,* L. R. 1 Ex. 265, 279, affirmed in *Rylands* v. *Fletcher,* L. R. 3 H. L. 330, 339–340, as indicated in previous decisions of this court, has an impact which is strictly limited to fact situations which are similar to that which produced the original holding. This has been indicated by *Ainsworth* v. *Lakin,* 180 Mass. 397, 399–401, cited in the brief for the defendant company. It was there said, "There is a class of cases in which it is held that one who, for his own purposes, brings upon his land noxious substances or other things which have a tendency to escape and do great damage, is bound at his peril to confine them and keep them on his own premises. This rule is rightly applicable only to such unusual and extraordinary uses of property in reference to the benefits to be derived from the use and the dangers or losses to which others are exposed, as should not be permitted except at the sole risk of the user." Second, the rule of the case was incorrectly stated. See *Ainsworth* v. *Lakin, supra; Kaufman* v. *Boston Dye House, Inc.* 280 Mass. 161, 166–167; *Bratton* v. *Rudnick,* 283 Mass. 556, 560–562. Third, the trial judge referred to *Rylands* v. *Fletcher, supra,* as "the rule in this case." While it is not unreasonable to suppose that in using the words "in this case" he was either intending to indicate that he meant "in this situation" or was limiting its application to the counts on ultrahazardous conduct, he

did not make that clear. It is true that he had been discussing ultrahazardous conduct immediately prior to his employment of the words "the rule in this case" but he failed to limit explicitly their application to the counts on ultrahazardous conduct. The jury must have been left with the impression that "the rule in this case" was applicable to all of the four counts which they subsequently considered. The defendant Cordio argues that this taint infected not only the counts on ultrahazardous conduct but also those based on negligence which were amply supported by the evidence. We are constrained to agree with this argument and, hence, in our view a retrial is necessary.

*Exceptions sustained.*